IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CONSUMERS ENERGY COMPANY and DTE ELECTRIC COMPANY, | |
| Plaintiffs/Counter-Defendants, | Case No: 2:22-cv-10847-PDB-JJCG |
| v. | Hon. Paul D. Borman |
| TOSHIBA AMERICA ENERGY SYSTEMS CORPORATION and TOSHIBA CORPORATION, | Mag. Judge Jonathan J. Grey |
| Defendants/Counter-Plaintiff. | |

## DEFENDANTS TOSHIBA AMERICA ENERGY SYSTEMS CORPORATION AND TOSHIBA CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIM AGAINST PLAINTIFFS

Cheryl A. Bush
Derek J. Linkous
Bush, Seyferth PLLC
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com
linkous@bsplaw.com

Terri L. Mascherin
Daniel J. Weiss*
Christopher Tompkins*
Elin I. Park*
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
(312) 840-8686
tmascherin@jenner.com
dweiss@jenner.com
ctompkins@jenner.com
epark@jenner.com

*Attorney for Plaintiffs*
*Attorneys Applications Forthcoming*

Nicholas Ellis
Foley & Lardner LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
(313) 234-7100
nellis@foley.com

Tony Tootell
Foley & Lardner LLP
*(Application for Admission Forthcoming)*
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
(213) 972-4796
ttootell@foley.com

*Attorneys for Defendants/Counter-Plaintiff*

## ANSWER

Defendants Toshiba America Energy Systems Corporation ("TAES") and Toshiba Corporation ("Toshiba") (together, "Defendants") file this Answer to Plaintiffs Consumers Energy Company ("CEC") and DTE Electric Company's ("DTE") Complaint and for their Answer and Affirmative Defenses, state as follows[1]:

## INTRODUCTION

1.      Defendants deny as untrue the allegations contained in paragraph 1 of Plaintiffs' Complaint.

2.      Upon information and belief, Defendants admit only that CEC and DTE jointly own the Ludington Plant and are sometimes jointly referred to as "Owner" in relevant documents. Defendants deny as untrue the remaining allegations in paragraph 2 of Plaintiffs' Complaint not specifically admitted herein.

3.      Defendants deny as untrue the allegations contained in paragraph 3 of Plaintiffs' Complaint.

4.      Defendants deny as untrue the allegations in paragraph 4 of Plaintiffs' Complaint.

---

[1] The contract which forms the basis of Plaintiffs' claims against TAES, and all amendments and change orders thereto, will be collectively referred to herein as "the Contract." The contract which forms the basis of Plaintiffs' claims against Toshiba will be referred to herein as "the Parent Guaranty."

5.     Defendants deny as untrue the allegations in paragraph 5 of Plaintiffs' Complaint.

6.     Defendants deny as untrue the allegations in paragraph 6 of Plaintiffs' Complaint.

7.     Defendants deny as untrue the allegations in paragraph 7 of Plaintiffs' Complaint.

## PARTIES

8.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of Plaintiffs' Complaint.

9.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of Plaintiffs' Complaint.

10.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of Plaintiffs' Complaint.

11.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of Plaintiffs' Complaint.

12.    Defendants admit the allegations in paragraph 12 of Plaintiffs' Complaint.

13.    Defendants admit the allegations in paragraph 13 of Plaintiffs' Complaint.

3

## JURISDICTION AND VENUE

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of Plaintiffs' Complaint.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of Plaintiffs' Complaint.

16.     Defendants deny as untrue the allegations in paragraph 16 of Plaintiffs' Complaint.

17.     Defendants deny as untrue the allegations in paragraph 17 of Plaintiffs' Complaint as worded.

## FACTS

**A.      The Ludington Plant Is Vital To Michigan's Electric Infrastructure.**

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of Plaintiffs' Complaint.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of Plaintiffs' Complaint.

20.     Upon information and belief, Defendants admit the allegations in paragraph 20 of Plaintiffs' Complaint.

21.     Defendants admit the allegations in paragraph 21 of Plaintiffs' Complaint.

22.     Upon information and belief, Defendants admit the allegations in paragraph 22 of Plaintiffs' Complaint.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of Plaintiffs' Complaint.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of Plaintiffs' Complaint.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of Plaintiffs' Complaint.

26.     Upon information and belief, Defendants admit the allegations in paragraph 26 of Plaintiffs' Complaint.

27.     Upon information and belief, Defendants admit the allegations in paragraph 27 of Plaintiffs' Complaint.

28.     Upon information and belief, Defendants admit the allegations in paragraph 28 of Plaintiffs' Complaint.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of Plaintiffs' Complaint.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of Plaintiffs' Complaint.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of Plaintiffs' Complaint.

5

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of Plaintiffs' Complaint.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of Plaintiffs' Complaint.

**B.     Toshiba Contracts To Perform Overhaul And Upgrade Work That Is Essential To The Ludington Plant's Future.**

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of Plaintiffs' Complaint.

35.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of Plaintiffs' Complaint.

36.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of Plaintiffs' Complaint.

37.     Defendants admit only that Toshiba International Corporation was selected for the Ludington Plant project. Defendants deny as untrue the remaining allegations in paragraph 37 of Plaintiffs' Complaint not specifically admitted herein.

38.     Defendants admit only that Toshiba International Corporation has knowledge and experience with pumped-storage hydroelectric plants, including the plants designed by the Ludington Plant's original designer utilizing the same pump-turbines and motor generators. Defendants lack knowledge or information sufficient

to form a belief as to the truth of the remaining allegations in paragraph 38 of Plaintiffs' Complaint.

39.     Defendants admit only that they are preeminent technology leaders in a variety of marketplace and sectors, including the North American turbine and generator marketplace. Defendants deny as untrue the remaining allegations in paragraph 39 of Plaintiffs' Complaint.

40.     Defendants admit the allegations in paragraph 40 of Plaintiffs' Complaint.

41.     Defendants admit only that the Contract includes and incorporates multiple attachments. Defendants deny as untrue the remaining allegations of paragraph 41 of Plaintiffs' Complaint.

42.     Defendants admit the allegations in paragraph 42 of Plaintiffs' Complaint.

43.     Defendants admit only that the Ludington Plant received a new FERC license spanning from 2019 to 2069. Defendants deny as untrue the remaining allegations in paragraph 43 of Plaintiffs' Complaint not specifically admitted herein.

44.     Defendants admit only that the total Contract price exceeds $500,000,000.00. Defendants deny as untrue the remaining allegations in paragraph 44 of Plaintiffs' Complaint.

**C.     The Contract Requires Toshiba To Provide Services To Engineer And Construct An Overhauled And Upgraded Plant With A 30-Year Service Life.**

45.     Defendants admit only that the Contract governs the work that TAES has provided and continues to provide on the Ludington Plant Project. Defendants deny as untrue the remaining allegations in paragraph 45 of Plaintiffs' Complaint not specifically admitted herein.

46.     Defendants admit only that the Contract governs the work that TAES has provided and continues to provide on the Ludington Plant Project. Defendants deny as untrue the remaining allegations in paragraph 46 of Plaintiffs' Complaint not specifically admitted herein.

47.     Defendants admit only that the Contract governs the work that TAES has provided and continues to provide on the Ludington Plant Project. Defendants deny as untrue the remaining allegations in paragraph 47 of Plaintiffs' Complaint not specifically admitted herein.

48.     Defendants deny as untrue the allegations in paragraph 48 of Plaintiffs' Complaint as worded.

49.     Defendants deny as untrue the allegations in paragraph 49 of Plaintiffs' Complaint as worded.

50.     Defendants deny as untrue the allegations in paragraph 50 of Plaintiffs' Complaint as worded.

51.     Defendants deny as untrue the allegations in paragraph 51 of Plaintiffs' Complaint as worded.

52.     Defendants deny as untrue the allegations in paragraph 52 of Plaintiffs' Complaint as worded.

53.     Defendants admit only that the Contract governs the work that TAES has provided and continues to provide on the Ludington Plant Project. Defendants deny as untrue the remaining allegations in paragraph 53 of Plaintiffs' Complaint not specifically admitted herein.

**D.     Toshiba Warrants That Its Work Will Conform And Be Free of Defects.**

54.     Defendants deny as untrue the allegations in paragraph 54 of Plaintiffs' Complaint as worded.

55.     Defendants deny as untrue the allegations in paragraph 55 of Plaintiffs' Complaint as worded.

56.     Defendants deny as untrue the allegations in paragraph 56 of Plaintiffs' Complaint as worded.

57.     Defendants deny as untrue the allegations in paragraph 57 of Plaintiffs' Complaint as worded.

**E.      Under The Contract, Consumers Energy And DTE Have Rights To Correct Toshiba's Defective Work At Toshiba's Expense.**

58.      Defendants deny as untrue the allegations in paragraph 58 of Plaintiffs' Complaint as worded.

59.      Defendants deny as untrue the allegations in paragraph 59 of Plaintiffs' Complaint as worded.

**F.      Toshiba Parent Guarantees Indemnification, Payment, And Performance.**

60.      Defendants admit only that Toshiba entered into the Parent Guaranty with Plaintiffs in 2011. Defendants deny as untrue the remaining allegations in paragraph 60 of Plaintiffs' Complaint not specifically admitted herein.

61.      Defendants deny as untrue the allegations in paragraph 61 of Plaintiffs' Complaint as worded. The assignment referenced in paragraph 61 and attached to Plaintiffs' Complaint as Exhibit B contains the referenced language, but Defendants deny that the quoted language is a full and complete statement, or that it entitles Plaintiffs to the relief requested.

62.      Defendants deny as untrue the allegations in paragraph 62 of Plaintiffs' Complaint as worded.

63.      Defendants deny as untrue the allegations in paragraph 63 of Plaintiffs' Complaint as worded.

64.    Defendants deny as untrue the allegations in paragraph 64 of Plaintiffs' Complaint as worded.

**G.    Toshiba Fails To Deliver Timely Work.**

65.    Defendants deny as untrue the allegations in paragraph 65 of Plaintiffs' Complaint.

66.    Defendants deny as untrue the allegations in paragraph 66 of Plaintiffs' Complaint.

67.    Defendants deny as untrue the allegations in paragraph 67 of Plaintiffs' Complaint.

68.    Defendants deny as untrue the allegations in paragraph 68 of Plaintiffs' Complaint.

69.    Defendants admit only that Plaintiffs and TAES entered into Contract Change Order 9 in February 2017, which modified the Contract. Defendants deny as untrue the remaining allegations in paragraph 69 of Plaintiffs' Complaint not specifically admitted herein.

70.    Defendants admit only that Contract Change Order 9 provided for the payment for, and settlement and release of, all claims for liquidated damages with respect to Units 2 and 4. Defendants deny as untrue the remaining allegations in paragraph 70 of Plaintiffs' Complaint not specifically admitted herein.

11

71.     Defendants deny as untrue the allegations in paragraph 71 of Plaintiffs' Complaint as worded.

72.     Defendants admit only that Contract Change Order 10 provided for the payment for, and settlement and release of, all claims for liquidated damages related to timeliness with respect to Unit 5. Defendants deny as untrue the remaining allegations in paragraph 72 of Plaintiffs' Complaint not specifically admitted herein.

73.     Defendants deny as untrue the allegations in paragraph 73 of Plaintiffs' Complaint.

74.     Defendants deny as untrue the allegations in paragraph 74 of Plaintiffs' Complaint.

75.     Defendants deny as untrue the allegations in paragraph 75 of Plaintiffs' Complaint.

76.     Defendants deny as untrue the allegations in paragraph 76 of Plaintiffs' Complaint.

77.     Defendants admit only that Plaintiffs are withholding Unit Final Acceptance for Unit 3 pending completion of Extended Commercial Operations Testing and based on a "Punch List" of items that Plaintiffs assert TAES must correct. Defendants deny as untrue the remaining allegations in paragraph 77 of Plaintiffs' Complaint.

12

78.     Defendants admit only that Plaintiffs have withheld payment due and owing to TAES under the Contract. Defendants deny as untrue the remaining allegations in paragraph 78 of Plaintiffs' Complaint.

79.     Defendants deny as untrue the allegations in paragraph 79 of Plaintiffs' Complaint as worded.

80.     Defendants deny as untrue the allegations in paragraph 80 of Plaintiffs' Complaint.

**H.      Toshiba Performs Defective Work.**

81.     Defendants deny as untrue the allegations in paragraph 81 of Plaintiffs' Complaint.

1.      *Toshiba Has Performed Defective Work With Respect To The DREs.*

82.     Defendants admit only that TAES installed Discharge Ring Extensions at the Ludington Plant. Defendants deny as untrue the remaining allegations in paragraph 82 of Plaintiffs' Complaint as worded that are not specifically admitted herein.

83.     Defendants deny as untrue the allegation in paragraph 83 of Plaintiffs' Complaint as worded.

84.     Defendants admit the allegations in paragraph 84 of Plaintiffs' Complaint.

13

85.     Defendants admit the allegations in paragraph 85 of Plaintiffs' Complaint.

86.     Defendants deny as untrue the allegations in paragraph 86 of Plaintiffs' Complaint as worded.

87.     Defendants deny as untrue the allegations in paragraph 87 of Plaintiffs' Complaint as worded.

88.     Defendants deny as untrue the allegations in paragraph 88 of Plaintiffs' Complaint.

89.     Defendants deny as untrue the allegations in paragraph 89 of Plaintiffs' Complaint.

90.     Defendants deny as untrue the allegations in paragraph 90 of Plaintiffs' Complaint.

91.     Defendants deny as untrue the allegations in paragraph 91 of Plaintiffs' Complaint.

92.     Defendants deny as untrue the allegations in paragraph 92 of Plaintiffs' Complaint.

93.     Defendants deny as untrue the allegations in paragraph 93 of Plaintiffs' Complaint.

94.     Defendants admit only that TAES promptly responded to any and all repair needs of Unit 3, including the Unit 3 DRE. Defendants deny as untrue the

14

remaining allegations in paragraph 94 of Plaintiffs' Complaint not specifically admitted herein.

95. Defendants admit only that the repairs made to Unit 3 DRE conform to the specifications set forth in the Contract and/or by the parties' agreement. Defendants deny as untrue the remaining allegations in paragraph 95 of Plaintiffs' Complaint not specifically admitted herein.

96. Defendants admit only that the repairs made to Units 2 and 5 conform to the specifications set forth in the Contract. Defendants deny as untrue the remaining allegations in paragraph 96 of Plaintiffs' Complaint not specifically admitted herein.

97. Defendants deny as untrue the allegations in paragraph 97 of Plaintiffs' Complaint.

98. Defendants deny as untrue the allegations in paragraph 98 of Plaintiffs' Complaint.

99. Defendants deny as untrue the allegations in paragraph 99 of Plaintiffs' Complaint.

100. Defendants deny as untrue the allegations in paragraph 100 of Plaintiffs' Complaint.

101. Defendants deny as untrue the allegations in paragraph 101 of Plaintiffs' Complaint.

15

102. Defendants deny as untrue the allegations in paragraph 102 of Plaintiffs' Complaint.

103. Defendants deny as untrue the allegations in paragraph 103 of Plaintiffs' Complaint.

104. Defendants deny as untrue the allegations in paragraph 104 of Plaintiffs' Complaint.

105. Defendants deny as untrue the allegations in paragraph 105 of Plaintiffs' Complaint.

106. Defendants deny as untrue the allegations in paragraph 106 of Plaintiffs' Complaint.

107. Defendants deny as untrue the allegations in paragraph 107 of Plaintiffs' Complaint.

108. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of Plaintiffs' Complaint.

109. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 of Plaintiffs' Complaint.

110. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 of Plaintiffs' Complaint.

111. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111 of Plaintiffs' Complaint.

2.      ***Toshiba Has Performed Defective Work With Respect To The Shaft Seal System.***

112.   Defendants deny as untrue the allegations of paragraph 112 of Plaintiffs' Complaint as worded.

113.   Defendants deny as untrue the allegations in paragraph 113 of Plaintiffs' Complaint as worded.

114.   Defendants deny as untrue the allegations in paragraph 114 of Plaintiffs' Compliant.

115.   Defendants deny as untrue the allegations in paragraph 115 of Plaintiffs' Complaint.

116.   Defendants admit only that TAES performed repairs to the shaft seal system, which conform to the specifications of the Contract. Defendants deny as untrue the remaining allegations in paragraph 116 of Plaintiffs' Complaint not specifically admitted herein.

117.   Defendants deny as untrue the allegations in paragraph 117 of Plaintiffs' Complaint.

118.   Defendants admit only that TAES performed repairs to the shaft seal system, which conform to the specifications of the Contract. Defendants deny as untrue the remaining allegations in paragraph 118 of Plaintiffs' Complaint not specifically admitted herein.

119.   Defendants admit only that TAES performed repairs to the shaft seal system, which conform to the specifications of the Contract. Defendants deny as untrue the remaining allegations in paragraph 119 of Plaintiffs' Complaint not specifically admitted herein.

120.   Defendants admit only that TAES performed repairs to the shaft seal system, which conform to the specifications of the Contract. Defendants deny as untrue the remaining allegations in paragraph 120 of Plaintiffs' Complaint not specifically admitted herein.

121.   Defendants deny as untrue the allegations in paragraph 121 of Plaintiffs' Complaint.

122.   Defendants deny as untrue the allegations in paragraph 122 of Plaintiffs' Complaint.

123.   Defendants deny as untrue the allegations in paragraph 123 of Plaintiffs' Complaint.

124.   Defendants admit only that TAES has made and continues to make repairs to the shaft seal system, which conform to the specifications of the Contract. Defendants deny as untrue the remaining allegations in paragraph 124 of Plaintiffs' Complaint not specifically admitted herein.

125.   Defendants deny as untrue the allegations in paragraph 125 of Plaintiffs' Complaint.

126.   Defendants deny as untrue the allegations in paragraph 126 of Plaintiffs' Complaint.

127.   Defendants deny as untrue the allegations in paragraph 127 of Plaintiffs' Complaint.

3.   ***Toshiba Has Performed Defective Work With Respect To The MOD Switches.***

128.   Defendants deny as untrue the allegations in paragraph 128 of Plaintiffs' Complaint.

129.   Defendants admit the allegations in paragraph 129 of Plaintiffs' Complaint.

130.   Defendants deny as untrue the allegations in paragraph 130 of Plaintiffs' Complaint.

131.   Defendants deny as untrue the allegations in paragraph 131 of Plaintiffs' Complaint.

132.   Defendants deny as untrue the allegations in paragraph 132 of Plaintiffs' Complaint.

133.   Defendants deny as untrue the allegations in paragraph 133 of Plaintiffs' Complaint.

134.   Defendants deny as untrue the allegations in paragraph 134 of Plaintiffs' Complaint.

135.    Defendants deny as untrue the allegations in paragraph 135 of Plaintiffs' Complaint.

136.    Defendants deny as untrue the allegations in paragraph 136 of Plaintiffs' Complaint.

137.    Defendants deny as untrue the allegations in paragraph 137 of Plaintiffs' Complaint.

138.    Defendants deny as untrue the allegations in paragraph 138 of Plaintiffs' Complaint.

139.    Defendants deny as untrue the allegations in paragraph 139 of Plaintiffs' Complaint.

140.    Defendants deny as untrue the allegations in paragraph 140 of Plaintiffs' Complaint.

141.    Defendants deny as untrue the allegations in paragraph 141 of Plaintiffs' Complaint.

**I.      Toshiba Has Failed To Remedy An Extensive Backlog Of Other Warranty Issues.**

142.    Defendants deny as untrue the allegations in paragraph 142 of Plaintiffs' Complaint.

143.    Defendants deny as untrue the allegations in paragraph 143 of Plaintiffs' Complaint.

144.   Defendants deny as untrue the allegations in paragraph 144 of Plaintiffs' Complaint.

145.   Defendants deny as untrue the allegations in paragraph 145 of Plaintiffs' Complaint.

146.   Defendants deny as untrue the allegations in paragraph 146 of Plaintiffs' Complaint.

147.   Defendants deny as untrue the allegations in paragraph 147 of Plaintiffs' Complaint.

148.   Defendants deny as untrue the allegations in paragraph 148 of Plaintiffs' Complaint.

149.   Defendants deny as untrue the allegations in paragraph 149 of Plaintiffs' Complaint.

**J.   Consumers Energy And DTE Attempt In Good Faith To Resolve Defective Work, But Toshiba Refuses.**

150.   Defendants deny as untrue the allegations in paragraph 150 of Plaintiffs' Complaint.

151.   Defendants deny as untrue the allegations in paragraph 151 of Plaintiffs' Complaint.

152.   Defendants deny as untrue the allegations in paragraph 152 of Plaintiffs' Complaint.

153.    Defendants admit only that Plaintiffs provided written correspondence dated July 30, 2021, which purported to invoke section GC9 of the Contract. Defendants deny as untrue the remaining allegations in paragraph 153 of Plaintiff's Complaint.

154.    Defendants admit only that representatives from TAES, Toshiba, CEC and DTE had a meeting on September 22, 2021. Defendants deny as untrue the remaining allegations in paragraph 154 of Plaintiffs' Complaint not specifically admitted herein.

155.    Defendants deny as untrue the allegations in paragraph 155 of Plaintiffs' Complaint.

156.    Defendants deny as untrue the allegations in paragraph 156 of Plaintiffs' Complaint.

157.    Defendants admit only that CEC and DTE sent correspondence dated December 10, 2021 to Toshiba, which purported to invoke the Parent Guaranty. Defendants deny as untrue the remaining allegations in paragraph 157 of Plaintiffs' Complaint not specifically admitted herein.

158.    Defendants admit the allegations in paragraph 158 of Plaintiffs' Complaint.

159.    Defendants deny as untrue the allegations in paragraph 159 of Plaintiffs' Complaint.

160.   Defendants admit only that CEC and DTE sent a letter to TAES and Toshiba dated April 6, 2022. Defendants deny as untrue the remaining allegations in paragraph 160 of Plaintiffs' Complaint not specifically admitted herein.

161.   Defendants deny as untrue the allegations in paragraph 161 of Plaintiffs' Complaint.

162.   Defendants admit only that TAES sent responsive correspondence to CEC's April 6, 2022 letter on April 6, 2022. Defendants deny as untrue the remaining allegations in paragraph 162 of Plaintiffs' Complaint not specifically admitted herein.

163.   Defendants deny as untrue the allegations in paragraph 163 of Plaintiffs' Complaint.

164.   Defendants admit only that TAES sent correspondence to CEC and DTE dated April 15, 2022 requesting the opportunity to collect additional data and CEC and DTE refused TAES's request. Defendants deny as untrue the remaining allegations in paragraph 164 not specifically admitted herein.

165.   Defendants deny as untrue the allegations in paragraph 165 of Plaintiffs' Complaint.

**K.   Toshiba's Defective, Nonconforming, And Delayed Work Significantly Injures Consumers Energy And DTE.**

166.   Defendants deny as untrue the allegations in paragraph 166 of Plaintiffs' Complaint.

167.    Defendants deny as untrue the allegations in paragraph 167 of Plaintiffs' Complaint.

168.    Defendants deny as untrue the allegations in paragraph 168 of Plaintiffs' Complaint.

169.    Defendants deny as untrue the allegations in paragraph 169 of Plaintiffs' Complaint.

170.    Defendants deny as untrue the allegations in paragraph 170 of Plaintiffs' Complaint.

171.    Defendants deny as untrue the allegations in paragraph 171 of Plaintiffs' Complaint.

172.    Defendants deny as untrue the allegations in paragraph 172 of Plaintiffs' Complaint.

173.    Defendants deny as untrue the allegations in paragraph 173 of Plaintiffs' Complaint.

## CLAIMS

### Count I: Breach of Contract
### (Breach of Warranty Provisions)
### *Against Toshiba*

174.    Defendants incorporate their answers to paragraphs 1 through 174 as though set forth in full herein.

24

175.    Defendants admit only that the parties executed the Contract and that the Contract governs the work that TAES has provided and continues to provide on the Ludington Plant Project. Defendants deny as untrue the remaining allegations in paragraph 175 of Plaintiffs' Complaint not specifically admitted herein.

176.    Defendants deny as untrue the allegations in paragraph 176 of Plaintiffs' Complaint as worded.

177.    Defendant deny as untrue the allegations in paragraph 177 of Plaintiffs' Complaint as worded.

178.    Defendants deny as untrue the allegations in paragraph 178 of Plaintiffs' Complaint.

179.    Defendants deny as untrue the allegations in paragraph 179 of Plaintiffs' Complaint, including all subparts (a) through (f).

180.    Defendants deny as untrue the allegations in paragraph 180 of Plaintiffs' Complaint.

181.    Defendants deny as untrue the allegations in paragraph 181 of Plaintiffs' Complaint.

182.    Defendants deny as untrue the allegations in paragraph 182 of Plaintiffs' Complaint.

183.   Defendants deny as untrue the allegations in paragraph 183 of Plaintiffs' Complaint, including the paragraph beginning, "WHEREFORE," which immediately follows it.

### Count II: Breach of Contract
### (Breach of Duty to Repair Defects)
### *Against Toshiba*

184.   Defendants incorporate their answers to paragraphs 1 through 183 as though set forth in full herein.

185.   Defendants admit only that the parties executed the Contract and that that the Contract governs the work that TAES has provided and continues to provide on the Ludington Plant Project. Defendants deny as untrue the remaining allegations in paragraph 185 of Plaintiffs' Complaint not specifically admitted herein.

186.   Defendants deny as untrue the allegations in paragraph 186 of Plaintiffs' Complaint.

187.   Defendants deny as untrue the allegations in paragraph 187 of Plaintiffs' Complaint.

188.   Defendants deny as untrue the allegations in paragraph 188 of Plaintiffs' Complaint.

189.   Defendants deny as untrue the allegations in paragraph 189 of Plaintiffs' Complaint, including the paragraph beginning, "WHEREFORE," which immediately follows it.

26

## Count III: Breach of Contract
## (Failure to Timely Complete Work)
### *Against Toshiba*

190.    Defendants incorporate their answers to paragraphs 1 through 189 as though set forth in full herein.

191.    Defendants admit only that the parties executed the Contract and that the Contract governs the work that TAES has provided and continues to provide on the Ludington Plant Project. Defendants deny as untrue the remaining allegations in paragraph 191 of Plaintiffs' Complaint not specifically admitted herein.

192.    Defendants deny as untrue the allegations in paragraph 192 of Plaintiffs' Complaint.

193.    Defendants deny as untrue the allegations in paragraph 193 of Plaintiffs' Complaint.

194.    Defendants deny as untrue the allegations in paragraph 194 of Plaintiffs' Complaint.

195.    Defendants deny as untrue the allegations in paragraph 195 of Plaintiffs' Complaint, including the paragraph beginning, "WHEREFORE," which immediately follows it.

## Count IV: Breach of Parent Guaranty

### *Against Toshiba Parent*

196.   Defendants incorporate their answers to paragraphs 1 through 195 as though set forth in full herein.

197.   Defendants admit only that CEC, DTE, and Toshiba executed the Parent Guaranty. Defendants deny as untrue the remaining allegations in paragraph 197 of Plaintiffs' Complaint not specifically admitted herein.

198.   Defendants deny as untrue the allegations in paragraph 198 of Plaintiffs' Complaint.

199.   Defendants deny as untrue the allegations in paragraph 199 of Plaintiffs' Complaint.

200.   Defendants deny as untrue the allegations in paragraph 200 of Plaintiffs' Complaint.

201.   Defendants deny as untrue the allegations in paragraph 201 of Plaintiffs' Complaint.

202.   Defendants admit only that CEC and DTE sent written correspondence to Toshiba dated December 10, 2021. Defendants deny as untrue the remaining allegations in paragraph 202 of Plaintiffs' Complaint not specifically admitted herein.

28

203.   Defendants deny as untrue the allegations in paragraph 203 of Plaintiffs' Complaint.

204.   Defendants deny as untrue the allegations in paragraph 195 of Plaintiffs' Complaint, including the paragraph beginning, "WHEREFORE," which immediately follows it.

205.   Defendants deny as untrue Plaintiffs are entitled to relief sought in the final paragraph of their Complaint entitled "PRAYER FOR RELIEF."

## **AFFIRMATIVE DEFENSES**

Defendants state as follows for their Affirmative Defenses:

1.     Plaintiffs' Complaint is barred, in whole or in part, because it fails to state a claim upon which relief may be granted and Defendants are entitled to judgment as a matter of law.

2.     Plaintiffs' Complaint is barred, in whole or in part, by the economic loss doctrine and by the existence of express contracts between the parties covering the subject matter of the dispute.

3.     Plaintiffs' Complaint is barred, in whole or in part, by the doctrine of unclean hands or *in pari delicto*.

4.     Plaintiffs' Complaint is barred, in whole or in part, by the applicable statute of limitations.

5.     Plaintiffs' Complaint is barred, in whole or in part, by the doctrines of

29

waiver, fraud, duress, estoppel and/or laches.

6.     Plaintiffs' Complaint is barred, in whole or in part, by the disclaimer of warranties in the applicable contracts.

7.     Plaintiffs' Complaint is barred, in whole or in part, because Plaintiffs' available damages are limited by contract.

8.     Plaintiffs' Complaint is barred in whole or in part, because Plaintiffs' have already fully and finally settled the claims they assert and/or such claims are subject to an accord and satisfaction.

9.     Plaintiffs' Complaint is barred, in whole or in part, because the applicable contract limits Plaintiffs' rights and remedies.

10.    Plaintiffs' Complaint is barred, in whole or in part, due to Plaintiffs' failure to mitigate its damages.

11.    Plaintiffs' Complaint is barred, in whole or in part, because Plaintiffs' damages, if any, were caused by Plaintiffs' own acts or omissions, or the acts or omissions of third parties.

Defendants expressly reserve the right to assert such other affirmative defenses as they become known through the course of discovery or further investigation.

30

## COUNTERCLAIM

Defendant/Counter-Plaintiff Toshiba America Energy Systems Corporation ("TAES" or "Counter-Plaintiff"), by and through undersigned counsel, files this counterclaim against Plaintiffs/Counter-Defendants Consumer Energy Company (CEC) and DTE Electric Company (DTE) (together, "Counter-Defendants"), and for its claims and causes of action state as follows.

### INTRODUCTION

1.      TAES has been forced to bring this Complaint for Breach of Contract because of Counter-Defendants' ongoing failure to act reasonably under the Contract that governs their relationship with TAES. Counter-Defendants have obstructed— and continue to obstruct—TAES's successful completion of the work it is obligated to perform under the parties' Contract. As a result, Counter-Defendants are attempting to artificially extend the warranty period for at least two of the six Units at the Ludington Pumped Storage Plant. Further, Counter-Defendants are withholding funds of over twelve million dollars that rightfully belongs to TAES.

2.      Additionally, Counter-Defendants owe TAES more than half a million dollars for an approved but unpaid invoice for work that TAES has already provided and for which Counter-Defendants are realizing financial gain through the successful operation of the hydroelectric power plant they jointly own. Relatedly, TAES has undertaken nearly three million dollars of additional work at Counter-Defendants'

request, and with Counter-Defendants' explicit approval, for which Counter-Defendants refuse to pay.

## PARTIES

3.     TAES is a domestic corporation organized under the laws of the State of Delaware. TAES's principal place of business is located in West Allis, Wisconsin.

4.     CEC is a domestic corporation organized under the laws of the State of Michigan with its principal place of business in Detroit, Michigan.

5.     DTE is a domestic corporation organized under the laws of the State of Michigan with its principal place of business in Detroit, Michigan.

## JURISDICTION AND VENUE

6.     Counter-Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

7.     The court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

8.     Moreover, Counter-Plaintiff's claims are compulsory counterclaims such that this Court has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367.

9.     The court has personal jurisdiction over Counter-Defendants because they are both citizens of the State of Michigan.

10.     Further, by bringing suit in this jurisdiction, Counter-Defendants have consented to the personal jurisdiction of this Court.

11.     Venue is proper in this district because both Counter-Defendants are subject to personal jurisdiction in this district.

## BACKGROUND OF THE DISPUTE

12.     Counter-Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**A.     The Contract**

13.     TAES is a preeminent leader in the hydroelectric power industry. TAES has extensive experience in rehabilitating and retrofitting aging hydroelectric power plants, like the Ludington Pumped Storage Plant ("the Ludington Plant") to optimize performance and maximize operational life.

14.     In 2010, Counter-Defendants selected Toshiba International Corporation to overhaul the power generating facility at the Ludington Plant in Ludington, Michigan ("the Ludington Project").

15.     In an agreement dated October 15, 2010 ("the Contract"), Toshiba International Corporation[2] undertook the enormous task of repairing, refurbishing, and modernizing the Ludington Plant, which was originally built in 1969.

---

[2] Toshiba International Corporation later assigned its contractual obligations to Toshiba America Energy Systems ("TAES"), who is a defendant in this litigation, and the Counter-Plaintiff in this Complaint. For continuity, the party obligated to

33

16.     The Contract that governs TAES's work on the Ludington Project is comprised of multiple documents, executed by the parties across eight years. These documents include the first "Engineering, Procurement, & Construction Contract" dated as of October 15, 2010, with exhibits, the "Ludington Pumped Storage Plant Major Unit Overhauls Conformed Contract Specifications," dated January 31, 2011, which is itself made up of four distinct parts, and ten additional change orders dated from May 10, 2012 (Change Order 01) to January 17, 2018 (Change Order 10).

17.     In the Contract, TAES agreed to perform the work described in Section Three of the Contract, SECTION III-DESCRIPTION OF WORK.

18.     SECTION III-DESCRIPTION OF WORK sets out TAES's schedule for completing the Ludington Project, as well as provides a list of acceptable subcontractors for TAES to use on the Ludington Project.

19.     In exchange for TAES's work under the Contract, Counter-Defendants agreed to pay TAES the price set forth in Section Four of the Contract, SECTION IV-CONTRACT PRICE.

20.     SECTION IV-CONTRACT PRICE has been amended several times, most recently by Change Order Ten. Pursuant to Change Order Ten, the current

---

perform under the Contract will be referred to as TAES, even if the events described herein occurred prior to Toshiba International Corporation's assignment.

contract price, which is the amount of money that Counter-Defendants have agreed to pay TAES, is $559,190,561.00.

21.     Counter-Defendants agreed to pay TAES monthly, upon TAES's preparation and submission to Counter-Defendants of "a progress report and an invoice showing the percent of the Work completed to the satisfaction of and accept[ance] by the Owner during such calendar month and the associated amount payable therefor…"

22.     While Article 5 of Section I of the Contract provides for Counter-Defendants' retention of ten percent of the amount invoiced monthly by TAES, upon a Unit reaching Unit Final Acceptance, Counter-Defendants must release the ten percent amounts previously retained. The Contract requires Counter-Defendants to pay TAES's final invoice for each Unit within thirty days after receipt and approval.

23.     Additionally, Change Order 09 provides a mechanism by which Counter-Defendants may release any amounts retained for a particular Unit before Unit Final Acceptance, upon receipt of a written request for same by TAES.

24.     Even though the Contract provides a mechanism for termination by Counter-Defendants, either for convenience or for default, Counter-Defendants have never terminated, or even threatened to terminate, the Contract.

25.     Consequently, Counter-Defendants remain bound to fulfill their obligations under the Contract, including their obligation to pay TAES the monies it is owed.

**B.     The Project**

26.     The Ludington Plant is comprised of six individual hydroelectric pump-turbines and generator-motors ("turbine generators"). Each turbine generator is referred to as a "Unit," and they are numbered "Unit 1" through "Unit 6." All Units are capable of—and designed to—operate independently of one another. This feature enables the operators of the Ludington Plant to take one or more Units offline without disrupting the generation of electricity by—and revenue from— the other Units.

27.     In light of the independent functionality of each Unit, Counter-Defendants and TAES agreed to complete the Ludington Project in phases, on a Unit-by-Unit basis. The parties' original schedule of completion for the Ludington Project anticipated that each Unit would take approximately two years to repair. Even at the time the parties executed the Contract, the Ludington Project was slated to take nearly ten years to complete.

28.     In accordance with the foregoing, TAES completed its overhaul of the Units at the Ludington Plant in the following order: Unit 2, Unit 4, Unit 5, Unit 6, Unit 1, and Unit 3.

29.     The first three of the six Units (2, 4 and 5) at the Ludington Plant have already received Unit Final Acceptance from Counter-Defendants. Unit Final Acceptance is the ultimate level of acceptance under the Contract and means that all work on a particular Unit has been completed in accordance with the Contract and accepted by Counter-Defendants.

30.     The chart below contains the dates that each Unit received Unit Interim Acceptance and/or Unit Final Acceptance from Counter-Defendants. The chart below also contains the dates that each Unit successfully achieved Extended Commercial Operations Testing ("ECOT").

| UNIT NUMBER | UNIT INTERIM ACCEPTANCE | EXTENDED COMMERCIAL OPERATION TEST | UNIT FINAL ACCEPTANCE |
|---|---|---|---|
| Unit 2 | 3-5-2015 | 9-2-2015 | 12-21-2019 |
| Unit 4 | 5-27-2016 | 8-20-2016 | 12-21-2019 |
| Unit 5 | 5-21-2017 | 8-29-2017 | 12-18-2017 |
| Unit 6 | 5-13-2018 | 10-24-2018 | *Withheld* |
| Unit 1 | 6-26-2019 | 9-19-2019 | *Withheld* |
| Unit 3 | 4-2-2022 | *To be Determined— Limited Commercial* | *To be Determined* |

| | | *Operation Test achieved* *4-17-2022* | |
|---|---|---|---|

31.    TAES has completed, and Counter-Defendants have accepted and paid for, the work associated with Units 2, 4, and 5. Each of these Units is operational, generating electricity and revenue for Counter-Defendants.

32.    As reflected above, Unit 2 received Unit Interim Acceptance from Counter-Defendants on March 5, 2015 and Unit Final Acceptance on December 21, 2019. Unit 4 received Unit Interim Acceptance on May 27, 2016 and Unit Final Acceptance on December 21, 2019. Unit 5 received Unit Interim Acceptance on May 21, 2017 and Unit Final Acceptance on December 18, 2017.

33.    The remaining three units—Units 6, 1, and 3, have all reached Unit Interim Acceptance. Unit 6 reached Unit Interim Acceptance on May 13, 2018. Unit 1 reached Unit Interim Acceptance on June 26, 2019. Unit 3 reached Unit Interim Acceptance on April 2, 2022.

34.    Under Section 5.5 of Specification 1140-003 of the Contract, Unit Interim Acceptance means:

> that all Work (excluding Punch List items and delivery of any Drawings and Specifications or other documents that are expressly specified in PART THREE – Attachment O as being deliverable after Unit Interim Acceptance) for the applicable Unit as stipulated in this Conformed Contract Specification has been completed, the generating Unit has successfully met the requirements of the factory and/or field tests as

specified in this Conformed Contract Specification required to have been performed up to this point in time, and the Contractor has completed all commissioning activities as described in its Commissioning Plan during the previously stated Commissioning Period.

35.    After a Unit achieves Unit Interim Acceptance, it must still clear two additional performance benchmarks before it will be considered for Unit Final Acceptance— successful Limited Commercial Operations Testing and successful Extended Commercial Operations Testing.

36.    Units 6 and 1 have successfully completed Extended Commercial Operations Testing. Unit 6 successfully completed Extended Commercial Operations Testing on October 24, 2018. Unit 1 successfully completed Extended Commercial Operations Testing on September 19, 2019.

37.    Unit 3 successfully completed Limited Commercial Operations Testing on April 17, 2022.

38.    After a Unit successfully completes Extended Commercial Operations Testing, the Contract does not provide for, or require, any other operational requirements for a Unit to achieve Unit Final Acceptance. Specifically, Section 5.9 of Specification 1140-003 of the Contract provides,

> After all of the Work for each Unit has been completed and each Unit has successfully met the requirements of the Limited Commercial Operation Test and the Extended Commercial Operation Test, the Owner will make a thorough examination of each Unit and the related modifications made under this Contract, and if it is found to comply

with the requirements stipulated herein, then the Owner may conduct the Acceptance Tests as described in the previous Section 5.8, herein.

39.     Counter-Defendants have not elected to perform any of the "Acceptance Tests" for Units 6 or 1. The Contract does not require any additional operations or performance testing before a Unit reaches Unit Final Acceptance. Consequently, Counter-Defendants have no basis to withhold Unit Final Acceptance for Units 6 and 1.

40.     Unit Final Acceptance is important for two reasons: first, the date a unit reaches Unit Final Acceptance dictates the date the warranty on that Unit will end. Second, Unit Final Acceptance triggers Counter-Defendants' obligation to release all monies held in retention from prior invoices for that particular Unit.

41.     Even though Unit 6 achieved successful Extended Commercial Operations Testing over three-and-a-half years ago, Counter-Defendants have impermissibly withheld, and continue to withhold, Unit Final Acceptance for Unit 6. Additionally, Counter-Defendants are impermissibly withholding $3,518,839.00 in retention for Unit 6 that TAES is entitled to receive.

42.     Further, even though Unit 1 achieved successful Extended Commercial Operations Testing over two-and-a-half years ago, Counter-Defendants have impermissibly withheld, and continue to withhold, Unit Final Acceptance for Unit 1. Additionally, Counter-Defendants are impermissibly withholding $8,893,086.00 in retention for Unit 1 that TAES is entitled to receive.

40

43.     By withholding Unit Final Acceptance from Units that have met all the required operational benchmarks for achievement thereof, Counter-Defendants are in breach of the parties' agreement.

44.     Specifically, by withholding Unit Final Acceptance from Units that have met all the required operational benchmarks for achievement thereof, Counter-Defendants are artificially extending the warranty period and impermissibly withholding millions of dollars in retention for the work TAES performed on Units 6 and 1. The money that is presently held in retention by Counter-Defendants belongs to TAES and Counter-Defendants are contractually obligated to pay it.

45.     On January 17, 2018, the Parties executed Change Order 10. Subsequent to its execution, Counter-Defendants' Project Manager authorized TAES to perform additional work on the Project, beyond that which was described in the Contract to date.

46.     Counter-Defendants' Project Manager memorialized Counter-Defendant's authorization by executing a series of Project Change Notices ("the PCNs").

47.     Article 3 of Section I of the Contract governs the Parties' rights and obligations when Counter-Defendants authorize additional work pursuant to a PCN.

48.     Article 3 of Section I provides,

When a need arises to immediately authorize extra work or changes in the Work to restore service, to avoid breakdowns, to avoid work

41

stoppages or for the Owner to meet its commitments, the Owner's Project Manager may authorize the performance of such extra work or changes by execution of a Project Change Notice ("PCN") in the form attached hereto as Exhibit A. Any work authorized pursuant to such a PCN shall thereafter be evidenced by a Contract Change Order as indicated above. Unless mutually agreed, such a Contract Change Order will be issued no less frequently than the earlier of (i) such time as PCN's have accumulated to a net value of one million dollars ($1,000,000), or (ii) three (3) months after issuance of the applicable PCN.

49.     Beginning in early 2018, TAES, performed the additional work contained within the PCNs that Counter-Defendants had already approved.

50.     Despite TAES's performance, though, Counter-Defendants have refused to execute a Contract Change Order (Change Order 11) to memorialize the price owed to TAES for the work that it has already performed.

51.     More than three months have elapsed since the foregoing PCNs were issued, but Counter-Defendants have not issued a Contract Change Order.

52.     Further, the PCNs have an accumulated net value of $2,697,738.00, but Counter-Defendants still have not issued a Contract Change Order.

53.      Counter-Defendants are contractually obligated to issue a Contract Change Order to reflect the work that Counter-Defendants authorized TAES to perform—at TAES's expense, no less.

54.     Despite their contractual obligation, though, Counter-Defendants refuse to issue a Contract Change Order with respect to these PCNs, and refuse to pay TAES the nearly three-million dollars that it is owed.

55.    Counter-Defendants are also contractually obligated to pay TAES's monthly invoices, for work provided in the preceding month, within thirty-days of receipt and approval of same.

56.    On April 14, 2020, TAES submitted its monthly invoice (Invoice Number 105926) to Counter-Defendants with respect to Unit 3 in the amount of $521,225.00. Counter-Defendants have not paid Invoice Number 105926, despite it having been due and owing for over two years.

57.    Counter-Defendants pre-approved the amount of Invoice Number 105926 before TAES submitted Invoice Number 105926 on April 14, 2020. Yet, upon receipt of Invoice Number 105926, Counter-Defendants refused, and still refuse, to pay it.

58.    Counter-Defendants' failure to pay Invoice Number 105926 from April 2020 is even more concerning in light of the fact that Unit 3 received Unit Interim Acceptance from Counter-Defendants on April 2, 2022. As such, Counter-Defendants admit that work on Unit 3 has been completed in conformance with the Contract's specifications and that Unit 3 has met factory and/or field test requirements.

59.    Nevertheless, Counter-Defendants continue to withhold payment for Invoice Number 105926 for Unit 3, in direct violation of the Contract.

60.     Counter-Defendants refusals under the Contract to provide Unit Final Acceptance—and the monies due therewith—and to pay TAES the money its owed for the work that it has already provided are in direct violation of the Contract. These violations have caused TAES damage, necessitating this suit.

## Count I
## Breach of Contract for Failure to Pay Amounts Owed As to Unit 3

61.     Counter-Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

62.     Article 5(d) of Section I of the Contract provides that Counter-Defendants are to pay TAES within thirty days of receipt and acceptance of the invoice providing therefor.

63.     On April 14, 2020, TAES tendered Invoice Number 105926 to Counter-Defendants with respect to work completed as of March 31, 2020, in accordance with Section 5(a) of the Contract. This invoice was for $521,225.00.

64.     Counter-Defendants approved the amount of Invoice Number 105926 before TAES even submitted it.

65.     The terms of Invoice Number 105926 and the Contract specifically require its payment within thirty days.

66.     More than thirty days have elapsed since TAES tendered Invoice Number 105926 to Counter-Defendants for payment.

67.     Counter-Defendants have failed to pay Invoice Number 105926, despite being contractually obligated to do so within thirty days of receipt, pursuant to Section 5(d) of the Contract.

68.     Counter-Defendants' failure to pay Invoice Number 105926 has caused TAES damage in the amount of at least the amount due thereunder, $521,225.00.

## Count II
## Breach of Contract for Failure to Release Retention on Unit 6

69.     Counter-Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

70.     Article 5(d) of Section I of the Contract provides that, upon achievement of Unit Final Acceptance, Counter-Defendants are required to release all amounts previously retained from invoices tendered and paid for that Unit.

71.     Alternatively, even before a particular Unit achieves Unit Final Acceptance, TAES can request the release of the amounts retained on that Unit, per Change Order 09.

72.     Section 5.9 of Specification 1140-003 of the Contract calls for Unit Final Acceptance once a Unit has achieved Unit Interim Acceptance, successfully completed Limited Commercial Operation Testing, and successfully completed Extended Commercial Operation Testing.

73.     Specifically, Section 5.9 of Specification 1140-003 of the Contract provides,

45

> After all of the Work for each Unit has been completed and each Unit has successfully met the requirements of the Limited Commercial Operation Test and the Extended Commercial Operation Test, the Owner will make a thorough examination of each Unit and the related modifications made under this Contract, and if it is found to comply with the requirements stipulated herein, then the Owner may conduct the Acceptance Tests as described in the previous Section 5.8, herein.

74.     Counter-Defendants have not elected to perform any of the "Acceptance Tests" that Section 5.8 of Specification 1140-003 of the Contract contemplates, referenced in the above-quoted section of the Contract. The Contract neither requires nor provides for any additional operations or performance testing before a Unit reaches Unit Final Acceptance.

75.     Nevertheless, Counter-Defendants refuse to award Unit Final Acceptance for Unit 6, and as a direct result thereof, have failed to release the amounts retained for Unit 6 that are due and owing to TAES.

76.     Counter-Defendants' refusal to award Unit Final Acceptance violates the parties' Contract because Counter-Defendants do not have a basis to do so.

77.     Counter-Defendants conduct with respect to Unit 6 also breaches the Contract because Counter-Defendants refuse to release the amounts retained by them with respect to Unit 6, even though TAES is entitled to those amounts.

78.     Moreover, TAES has requested a release of the amounts that Counter-Defendants have retained on Unit 6, and Counter-Defendants have refused, and continue to refuse, TAES's request, in violation of the Contract.

79.    TAES has been damaged as a consequence of the foregoing breaches because the failure to award Unit Final Acceptance is artificially—and indefinitely—prolonging the warranty period for Unit 6, which will subject TAES to increased exposure thereunder.

80.    TAES has also been damaged as a consequence of the foregoing breaches because Counter-Defendants' failure to award Unit Final Acceptance has resulted in Counter-Defendants' failure to release $3,518,839.00 in retention for Unit 6 that TAES is contractually entitled to receive.

## Count III
## Breach of Contract for Failure to Release Retention on Unit 1

81.    Counter-Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

82.    Article 5(d) of Section I of the Contract provides that, upon achievement of Unit Final Acceptance, Counter-Defendants are required to release all amounts previously retained from invoices tendered and paid for that Unit.

83.    Alternatively, even before a particular Unit achieves Unit Final Acceptance, TAES can request the release of the amounts retained on that Unit, per Change Order 09.

84.    Section 5.9 of Specification 1140-003 of the Contract calls for Unit Final Acceptance once a Unit has achieved Unit Interim Acceptance, successfully

completed Limited Commercial Operation Testing, and successfully completed Extended Commercial Operation Testing.

85.     Specifically, Section 5.9 of Specification 1140-003 of the Contract provides,

> After all of the Work for each Unit has been completed and each Unit has successfully met the requirements of the Limited Commercial Operation Test and the Extended Commercial Operation Test, the Owner will make a thorough examination of each Unit and the related modifications made under this Contract, and if it is found to comply with the requirements stipulated herein, then the Owner may conduct the Acceptance Tests as described in the previous Section 5.8, herein.

86.     Counter-Defendants have not elected to perform any of the "Acceptance Tests" that Section 5.8 of Specification 1140-003 of the Contract contemplates, referenced in the above-quoted section of the Contract. The Contract neither requires nor provides for any additional operations or performance testing before a Unit reaches Unit Final Acceptance.

87.     Nevertheless, Counter-Defendants refuse to award Unit Final Acceptance for Unit 1, and as a direct result thereof, have failed to release the amounts retained for Unit 1 that are due and owing to TAES.

88.     Counter-Defendants' refusal to award Unit Final Acceptance violates the parties' Contract because Counter-Defendants do not have a basis to do so.

89.     Counter-Defendants conduct with respect to Unit 1 also breaches the Contract because Counter-Defendants refuse to release the amounts retained by them with respect to Unit 1, even though TAES is entitled to those amounts.

90.     Moreover, TAES has requested a release of the amounts that Counter-Defendants have retained on Unit 1, and Counter-Defendants have refused, and continue, to refuse TAES's request, in violation of the Contract.

91.     TAES has been damaged as a consequence of the foregoing breaches because the failure to award Unit Final Acceptance is artificially—and indefinitely—prolonging the warranty period for Unit 1, which will subject TAES to increased liability thereunder.

92.     TAES has also been damaged as a consequence of the foregoing breaches because Counter-Defendants' failure to award Unit Final Acceptance has resulted in Counter-Defendants' failure to release $8,893,086.00 in retention for Unit 1 that TAES is contractually entitled to receive.

## Count IV
## Breach of Contract for Failure to Issue Change Order Eleven

93.     Counter-Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

94.     Article 3 of Section I of the Contract provides,

When a need arises to immediately authorize extra work or changes in the Work to restore service, to avoid breakdowns, to avoid work stoppages or for the Owner to meet its commitments, the Owner's

49

Project Manager may authorize the performance of such extra work or changes by execution of a Project Change Notice ("PCN") in the form attached hereto as Exhibit A. Any work authorized pursuant to such a PCN shall thereafter be evidenced by a Contract Change Order as indicated above. Unless mutually agreed, such a Contract Change Order will be issued no less frequently than the earlier of (i) such time as PCN's have accumulated to a net value of one million dollars ($1,000,000), or (ii) three (3) months after issuance of the applicable PCN.

95.    After the Parties executed Change Order 10 on January 17, 2018, Counter-Defendants' Project Manager authorized TAES to perform additional work on the Project, beyond that which was described in the Contract to date.

96.    Counter-Defendants' Project Manager memorialized Counter-Defendant's authorization by executing a series of PCNs.

97.    Beginning in early 2018, TAES performed the additional, Counter-Defendants-approved work contained within the PCNs.

98.    Despite TAES's performance, though, Counter-Defendants have refused to execute a Contract Change Order (Change Order 11) to memorialize the price owed to TAES for the work that it has already performed attendant to the PCNs.

99.    More than three months have elapsed since the foregoing PCNs were issued, but Counter-Defendants have not issued a Contract Change Order.

100.    Further, the PCNs have an accumulated net value of $2,697,738.00, but Counter-Defendants have not issued a Contract Change Order.

101.   Counter-Defendants' failure or refusal to issue the Contract Change Order is a breach of the Contract because the events in Article 3, Section I (i) and (ii) have already occurred.

102.   TAES has been damaged by Counter-Defendants' foregoing breach in the amount of at least $2,697,738.00.

103.   Specifically, this amount represents the value of the work that Counter-Defendants authorized TAES to perform and that TAES did perform on the Project. This work was performed for Counter-Defendants' benefit, and to TAES's detriment in the amount of at least $2,697,738.00.

104.   Because Counter-Defendants have not issued a Contract Change Order to capture the work authorized by the above-described PCNs, which TAES has already undertaken, Counter-Defendants have also not yet paid for the work authorized by the PCNs.

105.   TAES is entitled to payment of at least $2,697,738.00, plus additional sums for interest incurred thereon where recoverable, for the work it performed pursuant to Counter-Defendants' authorization (the PCNs). Counter-Defendants' failure to issue a Contract Change Order, in accordance with the Contract, and pay the foregoing amounts TAES has caused TAES harm.

## DAMAGES

106.    Counter-Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

107.    As a direct and proximate result of the foregoing breaches of the Contract, TAES has been damaged in the amount of at least $15,630,888.00. TAES demands recovery of all damages afforded to it by the laws of the State of Michigan for the breaches alleged herein, including the recovery of pre- and post-judgment interest and attorneys' fees and costs to the extent permitted by Michigan law.

## **PRAYER FOR RELIEF**

Counter-Plaintiff Toshiba America Energy Systems Corporation respectfully requests this Court render judgment in its favor, including:

A. Dismissing Plaintiffs' Complaint with prejudice;

B. Entering judgment for TAES on its Counterclaim and awarding damages in an amount to be proven at trial;

C. Awarding Defendants their costs and attorney fees incurred in connection with this matter; and

D. Awarding all other relief to which Defendants may be entitled, by contract, at law or in equity.

Respectfully submitted,

FOLEY & LARDNER LLP

By: */s/ Nicholas J. Ellis*
Nicholas J. Ellis (P73174)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
(313) 234-7100
nellis@foley.com

Tony Tootell
*(Application for Admission*
*Forthcoming)*
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
(213) 972-4796
ttootell@foley.com

*Attorneys for Defendants/Counter-*
*Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **June 24, 2022**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record.

*/s/ Nicholas J. Ellis*
Nicholas J. Ellis
