UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DTE ELECTRIC COMPANY and
CONSUMERS ENERGY
COMPANY,
     Plaintiffs/Counter Defendants,
v.

TOSHIBA AMERICAN ENERGY
SYSTEMS CORPORATION and
TOSHIBA CORPORATION,
     Defendants/Counter Claimants.
_____/

Case No. 22-10847

F. Kay Behm
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**ORDER GRANTING MOTION TO COMPEL DEPOSITION (ECF No. 77);
GRANTING IN PART AND HOLDING REMAINDER IN ABEYANCE
MOTION TO COMPEL WRITTEN DISCOVERY (ECF No. 78); and
GRANTING IN PART MOTION TO SEAL (ECF No. 85)**

Plaintiffs DTE Electric Company and Consumers Energy Company sue

Defendants Toshiba American Energy Systems Corporation ("TAES") and

Toshiba Corporation for breach of a contract to overhaul and upgrade a power

plant in Ludington, Michigan. TAES is a subsidiary of Toshiba; Toshiba

guaranteed TAES's work on the power plant. Plaintiffs allege that Defendants

delivered defective work and services. (ECF No. 1). In their counterclaim,

Defendants allege that Plaintiffs owe them for completed work and that Plaintiffs

are obstructing Defendants' completion of the work on the power plant. (ECF No.

17).

On April 19, 2024, Plaintiffs moved to compel a deposition and
supplemental responses to written discovery.  (ECF Nos. 77, 78).  They also
moved to seal certain documents and portions of their reply brief.  (ECF No. 85).
Discovery matters were referred to the undersigned.  (ECF No. 36).  The Court
held a hearing on these motions on May 30, 2024.

A.   General Discovery Principles

Parties may obtain discovery related to any nonprivileged matter relevant to
any party's claim or defense and proportional to the needs of the case, considering
the importance of the issues at stake in the action, the amount in controversy, the
parties' relative access to relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and whether the burden or
expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26.
Information within this scope of discovery need not be admissible in evidence to
be discoverable.  *Id.*  "Although a [party] should not be denied access to
information necessary to establish her claim, neither may a [party] be permitted to
'go fishing,' and a trial court retains discretion to determine that a discovery
request is too broad and oppressive."  *Superior Prod. P'ship v. Gordon Auto Body
Parts Co*., 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v.
Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)).  A party seeking

2

discovery may move for an order compelling an answer, designation, production, or inspection.  Fed. R. Civ. P. 37.

B.     Motion to Compel Deposition (ECF No. 77)

Plaintiffs move to compel the deposition of Kentaro Takagi, who was President of Defendant Toshiba America Energy Systems Corporation ("TAES") from 2019 to 2022.  This period is important because in 2019 Plaintiffs began to discover defects in some of the work performed by Toshiba.  They insist that deposing Mr. Takagi is necessary because he was at the center of the parties' discussions about defects; he authored and received correspondence between the parties and participated in meetings regarding the defective work and disagreements.  (ECF No. 77, PageID.1247).  For example, Mr. Takagi emailed Plaintiffs' representatives stating that he discussed certain issues with another high-level TAES officials, and said the company was preparing a corrective action plan.  (ECF No. 77-8, PageID.1293).  Plaintiffs contend that Defendants have identified Mr. Takagi as an important witness because Mr. Takagi is listed on their lay witness list and identified as a person with knowledge in response to interrogatories three times.  (ECF No. 77, PageID.1248).

Defendants note that, though Mr. Takagi is no longer President of TAES, he is currently the Chairman and CEO of TAES, as well as TAI and TIC (other Toshiba entities), so he is still a high-level official at the company.  And they

3

contend that Mr. Takagi does not have unique, special knowledge of the events giving rise to his lawsuit.  Though his name appears in over a thousand documents, another high-ranking TAES official, TAES Vice President Scott Torvik, appears on many thousands more.  (ECF No. 82, PageID.1571-72).  Plaintiffs deposed Mr. Torvik for two days in his official capacity and as the company's 30(b)(6) witness just days after they filed this motion.  Other Toshiba officials who participated in the meetings listed in Plaintiffs' motion have also been made available for deposition.  (*Id.* at PageID.1572).  Defendants take issue with Mr. Takagi being identified as "an important witness."  They insist that although he was named as a lay witness early in this litigation, they have no intent to call him as a witness at trial because he had little day-to-day involvement in the overhaul project.  (*Id.* at PageID.1572-73).  Mr. Takagi said as much in his affidavit.  (ECF No. 82-2, PageID.1583).  Defendants seek a protective order precluding the deposition because Mr. Takagi does not have unique knowledge of the issues and because jumping to the "apex" of the organization without first exhausting other sources is inappropriate.

Federal Rule of Civil Procedure 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had, or that the disclosure or discovery be limited to

4

certain matters.  Fed. R. Civ. P. 26(c).  The party seeking a protective order has the

burden of showing that good cause exists for the order.  *Nix v. Sword*, 11 F. App'x

498, 500 (6th Cir. 2001).  To show good cause, the movant must articulate specific

facts showing "clearly defined and serious injury resulting from the discovery

sought and cannot rely on conclusory statements."  *Id.* (citations and internal

quotation marks omitted).  This showing must be made even when considering the

deposition of a high-ranking, "apex" official.  *See Serrano v. Cintas Corp.*, 699

F.3d 884, 901 (6th Cir. 2012) ("Even in cases where we have considered

extensively a corporate officer's knowledge and, thus, capacity to provide

information relevant to the case, we have declined to credit a [corporate officer's]

bald assertion that being deposed would present a substantial burden, and still

required the corporate officer to meet Rule 26(c)(1)'s requirements.") (quotation

omitted).  "[I]n this Circuit, depositions of high-level executives are addressed the

same as any other potential witness: by examining relevance, proportionality, and

(where a protective order is sought), whether there are specific facts showing that

the deposition would lead to a clearly defined and serious injury."  *Eight Mile

Style, LLC v. Spotify USA Inc.*, 2022 WL 20936608, at *6 (M.D. Tenn. Mar. 31,

2022) (citing *id.*).

     Mr. Takagi has relevant knowledge, even if he does not have the most

knowledge or knowledge of day-to-day interactions and decisions.  He was the

President of TAES when Plaintiffs started discussing issues with the work.  There
is no authority suggesting that a deponent have day-to-day knowledge or be
included on a certain number of documents or correspondences.  As the decision-
maker at TAES, he has enough relevant knowledge to make him a useful deponent.
Plaintiffs stated at the hearing that they have not yet deposed a decision-maker
from TAES.  Plaintiffs also explained at the hearing that Mr. Takagi was the go-
between for Toshiba in Japan and TAES in the United States.  Toshiba took part in
the issues raised here, so discussion between Mr. Takagi and others could be
relevant.

      The next issue to address is whether taking Mr. Takagi's deposition would
be so burdensome as to lead to a clearly defined and serious injury.  Defendants
insist that deposing Mr. Takagi would be "unduly burdensome" because requiring
him to sit for a deposition in Chicago or Detroit would take him away from his
current roles as CEO and Chairman.  (ECF No. 82, PageID.1576).  First, Plaintiffs
offered to depose him in Houston, where he resides, so travel is no longer a
burden.  Second, his losing some work time to prepare for and attend this
deposition is not unduly burdensome, nor is it a clearly defined and serious injury.
"[I]t's not enough for a high-level executive to merely claim that sitting for a
deposition will be unduly burdensome; rather, the high-level executive must also
specifically show that he or she will suffer 'one of the harms listed in Rule

6

26(c)(1)(a) . . . to warrant a protective order.'"  *Davis v. SIG Sauer, Inc.*, 2023 WL

3292869, at *2 (E.D. Ky. May 5, 2023) (quoting *Serrano*, 699 F.3d at 901).

The parties cite the Court's holdings in other cases to support or distinguish

from their arguments.  Both cases are distinguishable.  The Court precluded the

deposition of the Oakland County Sheriff in *Overall v. Oakland County*, 2022 WL

3511068 (E.D. Mich. Feb. 4, 2022), because the information sought was irrelevant,

it was unlikely the sheriff had personal knowledge of some department matters,

and even on topics the sheriff would have personal knowledge, there was no

attempt to obtain the information elsewhere first.  Similarly, in *Lyngaas v. Solstice*

*Benefits, Inc.*, 2023 WL 6302998 (E.D. Mich. Sept. 27, 2023), the Court precluded

the deposition of the defendant's CEO because the case was in the early stage of

litigation and the plaintiff had not attempted to gather information from other

sources who may be more familiar with the issues.  The information here is

relevant, Mr. Takagi will have relevant personal knowledge to offer, and this case

is in the late stages of the litigation.  Thus, neither case supports precluding Mr.

Takagi's deposition.

The other crucial differences are the issues at stake and the amount in

controversy.  It should not come as a surprise that the president of a defendant

corporation would be deposed in a $500 million case.  Given the amount in

controversy, the deposition is proportional to the needs of the case.  Since

Defendants have offered no more than the assertion that it would be a burden for Mr. Takagi to be deposed and that he does not have day-to-day knowledge, the motion to compel the deposition is **GRANTED**.  The parties must confer on a date most convenient for all parties for the deposition.

      C.      <u>Motion to Compel (ECF No. 78)</u>

Plaintiffs' motion to compel concerns three groups of discovery requests: (1) Defendant Toshiba's actual costs incurred in refurbishing the plant, (2) Toshiba's disclosures to third parties during a corporate sale process about its liabilities and/or this lawsuit, and (3) complete responses to contention interrogatories.  At the hearing, Defendants' counsel stated that supplemental responses to the contention interrogatories would be provided at the end of this week.  The Court will hold a ruling on those interrogatories in abeyance.  After Plaintiffs review the responses and confer with Defendants, they will inform the Court whether the disputes are resolved.  If not resolved, the Court will likely schedule a status conference.

      1.      Cost Data – Documents Request No. 49

Plaintiffs seek an itemization of Toshiba's (encompassing both TAES and Toshiba Corporation) actual costs incurred in performing its work on the Ludington power plant.  Plaintiffs are seeking damages for the cost of re-doing the work on the power plant, so they contend that this information is relevant to that

amount of damages.  Toshiba objected to this request.  Toshiba argues that actual costs are irrelevant because they do not make a fact of consequence more or less probable in this breach of contract case.  It insists that how much it cost to perform the work as far back as 2012 has no bearing on what it might cost Plaintiffs to perform similar work again.  (ECF No. 81, PageID.1535).  It notes that the costs to Toshiba do not inform Plaintiffs' damages if Plaintiffs did not incur those costs themselves.  (*Id.* at PageID.1536).

Aside from irrelevance, Toshiba argues that it has already produced responsive documents by way of invoices received from subcontractors and detailed summaries of their subcontractor expenses incurred.  Toshiba also produced Project Financial Summaries showing costs incurred broken down by unit, and further broken down by materials, labor, and subcontractor.  (*Id.* at PageID.1537).  Toshiba asserts that the invoices reflect all the costs incurred in the project.  Plaintiffs insist that the produced "snapshot" reports do not contain the comprehensive data they are looking for, i.e., an export or report from the relevant accounting systems reflecting costs categorized according to the work breakdown structure Toshiba used for the project.  (ECF No. 78, PageID.1316).

The actual cost of the project is relevant to damages.  Experts could look at the data, adjust for inflation and other costs, and give an estimate as to how much it would cost Plaintiffs to fix Defendants' work, if Defendants are found liable, based

on how much it cost to do the work in the first instance.  The parties strenuously contested the form of the data.  It appears that Defendants have given Plaintiff piecemeal invoices or other documents, but not a document containing all the information for the whole project in one place.  Defendants' counsel acknowledged that Defendants use certain accounting software that keeps such data, but was unsure as to whether the software could provide a single document with all the information.  Parties are required to produced documents in the manner they are normally kept but are not required to create new documents in discovery. Defendants must try to provide the cost data requested through this software, if such a collection of data exists or is possible in this software.  Toshiba need not create a new document for Plaintiffs.  Supplemental production, if any, is due **within 21 days** of this Order.

> 2.    Corporate Sale Documents

Toshiba Corporation conducted a corporate sale process in 2022-2023, in which third parties were invited to submit proposals to purchase the entire company.  Potential buyers were provided information about Toshiba's business and assets and liabilities.  Plaintiffs believe that Toshiba likely included information, including descriptions of defective work and the cost to remedy those defects, about the issues in this case because of the potential $500 million liability. (ECF No. 78, PageID.1313, 1317).  Plaintiffs issued two documents requests.

10

Request No. 37 seeks all documents made available to potential buyers regarding the project or the lawsuit.  In Request No. 38, they sought all communications with representatives of the potential buyers about the project or the lawsuit.

Toshiba notes that although Plaintiffs referenced Requests Nos. 37 and 38, they made no argument relevant to No. 38's request for communications with potential buyers but it suffers the same defects as Request No. 37.  (ECF No. 81, PageID.1542, n. 5).  Toshiba argues that what it may or may not have represented to potential buyers about the project or this litigation will not make a fact of consequence more or less probable, and Plaintiffs did not show how such information is relevant.  (*Id.* at PageID.1542-43).  Toshiba contends that the requests exceed the needs of this case because it requests documents made available to all potential bidders, not just the company to whom Toshiba was sold in late 2023.  (*Id.* at PageID.1543).

Plaintiffs insist the information is relevant.  For instance, if Toshiba provided its bidders with assessments of defects or potential defects in its work, or the amount it would cost to fix the defects, those documents would be relevant. (ECF No. 78, PageID.1328-27).  They also argue that there cannot be any burden in producing these because these documents would have already been produced to the potential buyers.

The Court finds that documents given to and communications with prospective buyers concerning the issues in this litigation are relevant. For example, if Toshiba shared its view of its potential liability with buyers, its view is relevant to the issues. The evidence could also go toward credibility. Toshiba's argument that it would be burdensome to produce such documents because Plaintiffs seek them from all bidders and not just the winning company is not well taken. Toshiba said it solicited bids from a few companies, not many companies. Thus, it does not appear that there are an overly voluminous amount of documents that would need to be produced here.

Toshiba must produce documents in response to requests 37 and 38 **within 21 days** of this Order. If burden and overbreadth become an issue, the parties should confer on narrowing the scope of documents. If no agreement is reached, the parties are directed to contact chambers to schedule a status conference.

    D.    Motion to Seal (ECF No. 85)

Plaintiffs moved to file their reply to their motion to compel written discovery and two of three exhibits under seal. More specifically, they intend to file redacted copies of an excerpt of a deposition, a document produced by Toshiba, and a small portion of their reply brief because these items were marked confidential by Defendants because disclosure "could cause significant harm to Defendants' competitive and financial position." (ECF No. 85, pageID.1606-07).

12

The Sixth Circuit has long recognized a "strong presumption in favor of openness" in court records. *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co*., 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)).  The "heavy" burden of overcoming that presumption rests with the party seeking to seal the records. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016).  The moving party must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed.  *Id.* at 307.  This burden must be met **even if no party objects to the seal**, and it requires a "document-by-document, line-by-line" demonstration that the information in the document meets the "demanding" requirements for the seal.  *Id.* at 308.   In delineating the injury to be prevented, "specificity is essential."  *Id*.  Typically, "only trade secrets, information covered by a recognized privilege (such as attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)" are enough to overcome the presumption of access.  *Id.*  Should the Court order a document to be sealed, the Court must articulate why the interests supporting nondisclosure are compelling, why the interests supporting public access are not as compelling, and why the scope of the seal is no broader than necessary.  *Id*. at 306.

The motion is **GRANTED IN PART**.  At the hearing, Defendants' counsel conceded that the deposition transcript excerpts need not be sealed so long as they are only excerpts of the deposition attached to the reply brief.  Since it is only a small excerpt attached to the reply brief, it will not be sealed.  The document (ECF No. 86-1) will be sealed.  The document shows Toshiba's estimated and budgeted costs for certain work.  The reply brief will not be sealed.  The sentences or portions of sentences that would be sealed reveal information that was discussed on the record and which does not reveal Toshiba's business practices or procedures in a way that would cause harm.

Plaintiffs are directed to file an unsealed version of the reply brief and deposition excerpt.  The document attached to the reply may be filed under seal.  Plaintiffs should accomplish this **within 5 days** of this Order.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.


Date: June 3, 2024                          s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge