UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DTE ELECTRIC COMPANY and CONSUMERS ENERGY COMPANY,<br>    Plaintiffs/Counter-Defendants,<br>v.<br><br>TOSHIBA AMERICAN ENERGY SYSTEMS CORPORATION and TOSHIBA CORPORATION,<br>    Defendants/Counter-Claimants.<br>_____/ | Case No. 22-10847<br><br>F. Kay Behm<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**<u>ORDER ON MOTIONS (ECF Nos. 78, 89, 91, 94, 107, 114, 121, 126, 141)</u>**

The Court heard argument on the discovery disputes and motions to seal (ECF Nos. 78, 89, 91, 94, 107, 114, 121, 126) on August 29, 2024. Some motions were resolved during or after the hearing.

The Court will continue to hold the motion to compel at ECF No. 78 in abeyance. Before the latest hearing, the issues were significantly narrowed to a small set of documents. Defendants produced documents that Plaintiffs were still reviewing as of August 29, 2024. Plaintiffs will inform the Court whether the motion is resolved or we need to discuss remaining issues at a status conference. (*See* ECF No. 151, PageID.4047-49, Hearing Transcript).

The parties resolved the issues in Plaintiffs' motion to compel Defendants' Rule 30(b)(6) witness at ECF No. 91.  The parties filed a stipulation explaining their agreement.  (ECF No. 154).

The parties also narrowed the many motions to seal to one portion of one motion at ECF No. 89.  In their Joint Notice Regarding Motions to Seal (ECF No. 153), the parties request that all but part of ECF No. 89 be terminated and the sealed exhibits be unsealed.  In accordance with that agreement, the Court **TERMINATES AS MOOT** the motions to seal at ECF Nos. 94, 114, 121, and 126.  The documents at ECF Nos. 95-106, 115, 122, and 127-138 will be unsealed.  The motion to seal at ECF No. 89 is addressed below, along with the motions at ECF Nos. 107 and 141.

A.      General Discovery Principles

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26.  Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id*.  "Although a [party] should not be denied access to

information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37.

B.     Defendants' Motion for Sanctions (ECF No. 95, 107)

Defendants seek sanctions against Plaintiffs for producing a Rule 30(b)(6) deponent who purportedly was unprepared to testify to many crucial topics. Defendants deposed Plaintiffs' Ludington Power Plant Manager Kristopher Koster, who oversaw the entire overhaul project beginning in 2019.

Rule 30(b)(6) places burdens on both parties. The party seeking the deposition "must describe the matters to be explored in the deposition with 'reasonable particularity' sufficient to enable the responding corporation or business entity to produce a representative witness who can testify to the entity's knowledge on the topics so identified." *Alvey v. State Farm Fire & Cas. Co.*, 2018 WL 826379, at *3 (W.D. Ky. Feb. 9, 2018) (citation omitted). A topic is stated with reasonable particularity if it provides reasonable notice of what is called for. *Id.*

3

The noticed party must designate a person or persons knowledgeable in the topics listed in the notice to testify on the corporation's behalf. *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017) (citations omitted). Before the deposition, the designating party must prepare the witness to testify on matters not only that the deponent knows, but also those that should be known by the designating party. *Id.*; *United States v. Humana, Inc.*, 2023 WL 3168340, at *3 (W.D. Ky. Apr. 28, 2023) ("Rule 30(b)(6) testimony is designed to be representative of the corporation's knowledge not the individual's knowledge."). "[T]he corporation or agency in preparation for the Rule 30(b)(6) deposition must review all matters known or reasonably available to it in a good faith effort to find out the relevant facts and to collect information, review documents[,] and interview those employees with personal knowledge." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2016 WL 9460471, at *4 (W.D. Ky. June 29, 2016).

Though the deponent must be prepared to testify to a broad range of relevant topics, "absolute perfection is not required of a 30(b)(6) witness." *Wicker*, 278 F. Supp. 3d at 1000. "The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation." *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012).

Producing an unprepared witness is akin to failure to appear and may subject the designating party to sanctions under Rule 37(d). *Wicker*, 278 F. Supp. 3d at 1000. The party claiming that a corporate representative was unprepared "must make at least an initial showing—with record citations—suggesting that the designee's preparation was inadequate." *Id.* (citation omitted). If the deponent is deemed unprepared, the producing party is subject to the sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37(d)(3). Instead of or in addition to those sanctions, the Court must requiring the party failing to act, and/or its attorney, to pay reasonable expenses and attorney fees caused by the failure unless the failure was substantially justified. *Id.*

Defendants' issues with Koster's testimony are, to them, too numerous to recount in detail in their motion, so they provide four illustrative examples of unpreparedness in their brief; two examples were discussed at the hearing— attorney fees and causation.

1. Attorney fees

Defendants pointed out that Plaintiffs invoked a contractual provision entitling them to attorney fees if they are the prevailing party. Because of that invocation, attorney fees are damages to be demonstrated as part of their case in chief, rather than costs which are determined after the merits. Defendants argued that the deposition notice specifically called for the deponent to talk about the

5

claim for damages, yet Koster would only testify that Plaintiffs have spent more than $10 million in attorney fees, without specifics. Koster would not give the names of the attorneys or the law firms. (ECF No. 151, PageID.4069-70). On June 14, 2024, Defendants received Plaintiffs' expert report on costs and expenses. Attached to the report is a June 10, 2024, invoice for attorney fees which had not been produced. So Defendants have an expert report claiming a certain amount in attorney fees but no factual support for the claimed amount. (*Id.* at PageID.1070). They want an opportunity to continue a 30(b)(6) deposition with someone knowledgeable on the factual basis for attorney fees.

     In response, Plaintiffs insist that there was no topic on attorney fees. Topic 38 arguably comes close, but it asks for all out-of-pocket costs or expenses incurred in performing work at the plaint that Plaintiffs contend should have been performed by TAES or was performed to correct work previously done by TAES. (ECF No. 151, PageID.4075; ECF No. 107-2, PageID.2194, Deposition Notice). In other words, Topic 38 asks for work done at the plant. Even without a topic specifically addressing attorney fees, Koster was able to testify that Plaintiffs have spent more than $10 million in attorney fees, which was confirmed in the expert report. (ECF No. 151, PageID.4076). Plaintiffs' counsel also pointed out that the issue of attorney fees is open—this litigation is not over, and may not be over until next year after a trial. More discovery will be needed on fees. (*Id.* at

6

PageID.4076-77). This is, at least in part, why Plaintiffs have moved to bifurcate the case between merits and attorney fees.

Defendants insist that Topics 1-4 and 38 cover attorney fees. (ECF No. 151, PageID.4086). The Court disagrees. Topics 1-4 and 38 do not reasonably suggest that the deponent needed to be prepared to talk about the damages claim for attorney fees. Topics 1-4 seek "All facts in Plaintiffs' Complaint that [Plaintiffs] rely on to support [their] claim against TAES" for breach of warranty, breach of duty to repair defects, failure to timely complete work, and breach of the Parent Guaranty signed by Defendant Toshiba Corporation. (ECF No. 107-2, PageID.2191). Though Plaintiffs assert entitlement to attorney fees under the Parent Guaranty's prevailing party provision, attorney fees are not facts alleged to support the underlying claims. So it is reasonable that Plaintiffs did not expect attorney fees to be discussed at the deposition. Likewise, Topic 38 is for all out-of-pocket costs incurred in performing work at the plaint that Plaintiffs contend should have been performed by TAES, or that TAES performed but is now defective. (*Id.* at PageID.2194). It reasonable that the deponent was not armed with all the attorney fees data Defendants wanted because Topic 38 did not ask for attorney fees associated with the work at issue in this litigation.

Because attorney fees was not raised in a topic, or at least not in an obvious way, the Court does not find Koster's testimony on the subject deficient such that

7

Defendants are entitled to sanctions or re-deposition on attorney fees. That said, if attorney fees and merits are bifurcated, or attorney fee discovery otherwise continues, Defendants will have tools available to seek attorney fee discovery. Expert discovery is also extended (below), so Defendants will have the chance to probe Plaintiffs' damages.

      2.    Causation

The parties also argued the issue of Koster's testimony on causation. In their complaint, Plaintiffs alleged that "[c]ontinued cracking and other defects in and around the DREs [the discharge ring extensions] will ultimately lead to unrepairable leaks and will undermine the structural integrity of the DREs and adjacent structures. Distortion of the DREs will interfere with operation of the runner, and the Units will become inoperable. The only solution is to replace the DREs before they fail." (ECF No. 1, PageID.30, ¶ 104). During the deposition, Defendants asked Koster what the risk of unit failure is. Koster did not know and was unaware of any effort to calculate the risk. (ECF No. 95, PageID.1947-48; ECF No. 151, PageID.4073).

Defendants argued that it is not enough for Plaintiffs to assert that there are cracks in the units so the units must be replaced. A crack does not necessarily imply a risk of failure. (ECF No. 95, PageID.1946). Plaintiffs contend that causation is not an element to the breach of contract claim; causation is an issue in

tort cases. (ECF No. 151, PageID.4078). Thus, they argue that Koster did not need to testify about causation. Plaintiffs also argued that there was no topic covering causation. (*Id.* at PageID.4080).

Plaintiffs' allegation that cracking and other issues will lead to unit failure is part of its claims against TAES for providing defective work, so it is encompassed in Topics 1-4 which seek the factual basis for its claims. But, the Court does not read Koster's testimony to be so lacking that it amounts to a failure to appear. For one thing, a 30(b)(6) deponent must testify to the corporation's knowledge or on information that the corporation reasonably should know. Here, if Plaintiffs did not calculate or quantify the risk of failure in any of the units, then the risk is not something the corporation knows. Thus, it was not inappropriate for Koster to fail to quantify the risk. Moreover, the risk of failure was one line of questioning during a deposition that lasted 14 hours. *See Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997) ("In order for the Court to impose sanctions, the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas.") (citation omitted).

An example of a deponent's "failure to appear" helps make the point. In *ChampionX, LLC v. Resonance Sys., Inc.*, 2024 WL 2224338 (E.D. Tenn. May 16, 2024), the plaintiff noticed a Rule 30(b)(6) deposition that included topics concerning, for example, products and services sold, the volume of each product

9

and service sold each customer, the price charged for each product and service, and the profits earned from each sale. *Id.* at *3. When asked how he prepared for the deposition, the deponent said his testimony was "really related more to my overall knowledge of what we've done." *Id.* He said he could not memorize the documents, but he was prepared to look at documents during the deposition and testify about them. *Id.* On the topic of sales and price, he could not answer questions about invoices, relying instead on the fact that the documents had been produced in discovery. *Id.* In response to questioning about sales information not produced in documents discovery, the deponent said he was unaware of the status of document discovery and said he could only provide ballpark estimates of revenue from certain customers. *Id.* at *4. The court found the deponent unprepared—the deponent had only looked over some documents, could not testify about specifics, and acknowledged he was unprepared to discuss certain sales information. *Id.* at *5. In short, it appeared that the deponent testified from his own general or personal knowledge rather than from the perspective of what the organization knew or what was reasonably available to it. *Id.*; *see also United States ex rel. Griffis v. EOD Tech., Inc.*, 2024 WL 3852128, at *6-7 (E.D. Tenn. Aug. 16, 2024) (witness unprepared when she could testify generally about assets and liabilities, but could not provide specifics or explain how certain numbers were reached).

10

Koster's testimony does not come close to what occurred in *ChampionX*. Koster's inability to quantify the risk of failure, in context, is not a failure to appear. For these reasons, Koster's inability to quantify the risk of unit failure does not amount to egregiously inadequate testimony.

3. Remaining Areas of Concern

To the extent that Defendants intend to press their arguments on the other areas of concern addressed in the brief, the Court considers them here.

Defendants' counsel asked Koster about corrosion in the units as of 2010, before Defendants began the overhaul project. Koster did not know the exact cause of corrosion in 2010. (ECF No. 102, PageID.2140). The Court finds no problem with this. Issues with the units that TAES contracted to replace is not among the deposition topics. Thus, the Court does not deem Koster inappropriately unprepared to discuss this issue.

The final point of contention is Koster's inability to explain some of Plaintiffs' damages, such as what portion of his salary was attributable to the claimed damages or to say how long Plaintiffs would wait for Toshiba to fix the problems. (ECF No. 95, PageID.1951-52). The examples of short exchanges in which Koster did not directly answer do not add up to a failure to appear. Again, corporate witnesses need not be perfect, but must overall exhibit thorough knowledge of the corporation's affairs and claims. Koster met that burden at least

11

to the extent that sanctions are not warranted, including a re-deposition to cover these few areas of questioning. Defendants are not left completely in the dark on damages since Plaintiffs produced an expert report on that issue. Expert discovery and rebuttal report deadlines are extended, below, so Defendants will have the opportunity to further address damages.

In all, Defendants are challenging a select few pages from a deposition that took two full days to complete. The Court does not deem these instances to amount to a failure to appear. The motion for sanctions is **DENIED**.

C. <u>Motion to Seal (ECF N0. 89)</u>

Plaintiffs moved to seal exhibits A-C to their motion to compel because Defendants marked those exhibits confidential. (ECF No. 89). Defendants agree that exhibits B and C should be unsealed, but argue that Exhibit A, excerpts of a deposition transcript, should remain sealed because the transcript includes testimony about two non-party employees' employment status and other private financial information. (ECF No. 151, PageID.4067).

The Sixth Circuit has long recognized a "strong presumption in favor of openness" in court records. *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). The "heavy" burden of overcoming that presumption rests with the party seeking to seal the records.

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). The moving party must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed. *Id.* at 307. This burden must be met **even if no party objects to the seal**, and it requires a "document-by-document, line-by-line" demonstration that the information in the document meets the "demanding" requirements for the seal. *Id.* at 308. In delineating the injury to be prevented, "specificity is essential." *Id.* Typically, "only trade secrets, information covered by a recognized privilege (such as attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)" are enough to overcome the presumption of access. *Id.* Should the Court order a document to be sealed, the Court must articulate why the interests supporting nondisclosure are compelling, why the interests supporting public access are not as compelling, and why the scope of the seal is no broader than necessary. *Id.* at 306.

    The motion to seal is **GRANTED** but in limited scope. The non-parties' financial information has no relevance to the issues currently before the Court, so the public has no interest in this information. Thus, the interest in keeping that private financial information private is outweighed by any interest in making it public. That said, Defendants would have all 17 pages of the excerpted transcript sealed when not every page contains the private financial information. As a result,

Defendants are **DIRECTED** to file a copy of Exhibit A that redacts the protected financial information. Plaintiffs or Defendants are **DIRECTED** to file unredacted versions of Exhibits B and C. These filings must be accomplished **within 14 days** of this Order.

    D.    <u>Motion to Amend Scheduling Order (ECF No. 141)</u>

Defendants moved for an amended scheduling order in large part to extend the time for expert rebuttal reports and discovery. During the hearing, Plaintiffs agreed to the proposed dates in Defendants' motion (ECF No. 141-2, PageID.3943), but Defendants now seek to add one month to their proposed dates. Defendants moved for extended deadlines because Plaintiffs served ten expert reports on the June 14, 2024, deadline. Their rebuttal experts need more time to create their reports.

The motion to amend the scheduling order is **GRANTED IN PART**. A case management order can be modified if there is "good cause and with the judge's consent." Fed. R. Civ. P. 16 (b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal quotation marks and citation omitted). The Court should also consider possible prejudice to the party opposing the modification. *Id.*

14

The Defendants ask for five months to serve rebuttal expert reports, which is not an insignificant amount of time. Yet this is a complex case with a large sum in controversy. Thus, it is not unreasonable that more time is needed to rebut ten expert reports. Nor is there any suggestion in the record that Defendants have been dilatory in attempting to meet the current case management order's deadlines. The Court will meet the parties in the middle of their dispute, as reflected in the following case management deadlines:

| SUMMARY OF MAJOR DEADLINES | |
|---|---|
| EVENT | DEADLINE |
| Rebuttal Expert Reports | November 1, 2024 |
| Expert Discovery Cutoff | December 31, 2024 |
| Dispositive and Daubert Motions | March 14, 2025 |
| Exhibit List | May 2, 2025 |
| Settlement Conference | February 27, 2025 |
| Final Pretrial Conference and Jury Trial | To be scheduled by District Judge Behm |

Further extensions of scheduling deadlines will not be permitted absent extraordinary circumstances.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as

15

error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: September 17, 2024

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge