# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CONSUMERS ENERGY COMPANY
and DTE ELECTRIC COMPANY,

      Plaintiffs/Counter-Defendants,

      v.

TOSHIBA AMERICA ENERGY
SYSTEMS CORPORATION and
TOSHIBA CORPORATION,

      Defendants/Counter-Plaintiffs.

Case No: 4:22-cv-10847

Hon. F. Kay Behm

Mag. Judge Curtis Ivy, Jr.

**Oral Argument Requested**

**TOSHIBA AMERICA ENERGY SYSTEMS CORPORATION'S
RESPONSE IN OPPOSITION TO PLAINTIFFS'
<u>MOTION TO ENTER PARTIAL FINAL JUDGMENT</u>**

## <u>QUESTION PRESENTED</u>

1.  Should the Court *deny* Plaintiffs' Motion to Enter Partial Final Judgment?

Defendants:          Yes.

Plaintiffs:            No.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 54

*Corrosioneering, Inc. v. Thyssen Env't Sys., Inc.*,
    807 F.2d 1279 (6th Cir. 1986)

*Lowery v. Fed. Express Corp.*,
    426 F.3d 817 (6th Cir. 2005)

*Operating Eng'rs Local 324 Pension Fund v. Laramie Enters., Inc.*,
    No. 22-10709, 2025 WL 2681973 (E.D. Mich. Sep. 19, 2025)

*Thompson v. Parkes*,
    963 F.2d 885 (6th Cir. 1992)

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT .............................................................................................1

I.      Partial Final Judgment Under Rule 54(b) is Improper ....................................1

        A.      Under Step One of the Rule 54(b) Analysis, This Action Has Only
                One Inseparable "Claim" .........................................................1

        B.      Under Step Two of the Rule 54(b) Analysis, *Corrosioneering*'s
                Factors Demonstrate the Unsuitability of Certification Here ...............5

        C.      Plaintiffs Seek to Misuse Rule 54(b) .......................................10

II.     GC28(b) of the Overhaul Contract Bars Prejudgment Interest .....................13

III.    Procedures for Adjudicating Count IV Must Allow Toshiba Corporation
        To Put on a Full Defense in a Bench Trial ......................................19

        CONCLUSION .....................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bent v. Bostwick,*
    384 N.W.2d 124 (Mich. Ct. App. 1986) ................................................................ 17

*Bobchick v. Grange Ins. Co. of Michigan,*
    No. 19-12467, 2021 WL 927370 (E.D. Mich. Mar. 11, 2021) ...................... 15, 17

*Callahan v. Alexander,*
    810 F. Supp. 884 (E.D. Mich. 1993) ..................................................................... 7

*Carpenter v. Liberty Ins. Corp.,*
    850 F. App'x 351 (6th Cir. 2021) ......................................................................... 6

*Centria Home Rehab., LLC v. Allstate Ins. Co.,*
    No. 365313, 2024 WL 4820775 (Mich. Ct. App. Nov. 18, 2024) ...................... 16

*Corrosioneering, Inc. v. Thyssen Env't Sys., Inc.,*
    807 F.2d 1279 (6th Cir. 1986) ................................................................ 5, 6, 8, 11

*Curtiss-Wright Corp. v. Gen. Elec. Co.,*
    446 U.S. 1 (1980) .................................................................................................. 4

*Dunigan v. Thomas,*
    No. 22-11038, 2024 WL 889032 (E.D. Mich. Mar. 1, 2024) ............................... 7

*Farmers Ins. Exch. v. Titan Ins. Co.,*
    651 N.W.2d 428 (Mich. Ct. App. 2002) ....................................................... 14, 16

*Gordon Sel-Way, Inc. v. Spence Bros., Inc.,*
    475 N.W.2d 704 (Mich. 1991) ............................................................................ 13

*Grover Hill Grain Co. v. Baughman-Oster, Inc.,*
    728 F.2d 784 (6th Cir. 1984) ............................................................................... 23

*Gutzwiller v. Fenik,*
    No. 86-3728, 1986 WL 18174 (6th Cir. 1986) ..................................................... 4

*Hadfield v. Oakland Cty. Drain Comm'r,*
    554 N.W.2d 43 (Mich. Ct. App. 1996) ............................................................... 16

*Hildebrand v. Board of Trustees*,
    607 F.2d 705 (6th Cir. 1979) ................................................................... 20

*Loc. Union No. 1812, United Mine Workers of Am. v. BethEnergy Mines, Inc.*,
    992 F.2d 569 (6th Cir. 1993) ................................................................... 5

*Lowery v. Fed. Express Corp.*,
    426 F.3d 817 (6th Cir. 2005) ................................................................... 2

*Martin v. Wilks*,
    490 U.S. 755 (1989)............................................................................20-21

*McIntyre v. First Nat'l Bank of Cincinnati*,
    585 F.2d 190 (6th Cir. 1978) ................................................................... 2

*Merial, Inc. v. Sergeant's Pet Care Prods.*,
    806 F. App'x 398 (6th Cir. 2020) ........................................................... 9

*Old Orchard by the Bay Assocs. v. Hamilton Mutual Ins. Co.*,
    454 N.W.2d 73 (Mich. 1990) .................................................... 14, 15, 17

*Operating Eng'rs Local 324 Pension Fund v. Laramie Enters., Inc.*,
    No. 22-10709, 2025 WL 2681973 (E.D. Mich. Sep. 19, 2025) ......... 6, 7

*Peisner v. Detroit Free Press*,
    364 N.W.2d 600 (Mich. 1984)................................................................ 18

*Penncro Associates, Inc. v. Spring Spectrum, L.P.*,
    499 F.3d 1151 (10th Cir. 2007) ............................................................ 13

*Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*,
    No. 22-3828, 2023 WL 2746106 (6th Cir. Mar. 10, 2023) ................... 4

*Redmon v. Sinai-Grace Hosp.*,
    No. 12-15462, 2014 WL 1746085 (E.D. Mich. Apr. 30, 2014).......... 18

*Rory v. Continental Ins. Co.*,
    703 N.W.2d 23 (Mich. 2005)................................................................. 13

*Sherrod v. Wal-Mart Stores, Inc.*,
    103 F.4th 410 (6th Cir. 2024) ................................................................. 2

*Sullivan Indus., Inc. v. Double Seal Glass*,
    480 N.W.2d 623 (Mich. Ct. App. 1991) ................................................................ 18

*Thompson v. Parkes*,
    963 F.2d 885 (6th Cir. 1992) ............................................................................... 20

*Transp. Ins. Co. v. Citizens Ins. Co. of Am.*,
    574 F. App'x 607 (6th Cir. 2014) ...................................................................... 15

*Transp. Ins. Co. v. Citizens Ins. Co. of Am.*,
    No. 08-15018, 2013 WL 4604126 (E.D. Mich. Aug. 29, 2013) ........................ 17

*U.S. Citizens Ass'n v. Sebelius*,
    705 F.3d 588 (6th Cir. 2013) ......................................................................... 5, 11

*United States Fire Ins. Co. v. City of Warren*,
    87 F. App'x 485 (6th Cir. 2003) ....................................................................... 16

*Vaughn Custom Sports, Inc. v. Piku*,
    No. 12-13083, 2014 WL 6455582 (E.D. Mich. Nov. 17, 2014) ........................ 16

*Welker v. Goodyear Tire Co.*,
    No. 96-3045, 1997 WL 369450 (6th Cir. 1997) ................................................ 17

*West Virginia v. United States*,
    479 U.S. 305 (1987) .......................................................................................... 14

*Wynn Oil Co. v. American Way Serv. Corp.*,
    No. 94-1294, 1995 WL 431019 (6th Cir. July 20, 1995) ..................................... 14

## STATUTES AND RULES

Fed. R. App. P. 4(a)(4)(A) ......................................................................................... 4

Fed. R. Civ. P. 54(b) ......................................................................................... passim

MCL 600.6013 ......................................................................................................... 13

## INTRODUCTION

Contrary to Plaintiffs' Motion and Brief (ECF 399), certification under Rule 54(b) is *not* warranted as to the claims against TAES, given the closely related claims that remain pending against Toshiba Corporation. Indeed, the strong federal policy against piecemeal appeals precludes such a certification; judicial economy and equity mandate a single appeal from this action. Beyond that, Plaintiffs' conception of the further proceedings in this Court is deeply flawed, as to the claims against TAES and as to the claims against Toshiba Corporation.

## ARGUMENT

### I.   Partial Final Judgment Under Rule 54(b) is Improper

Rule 54(b) provides a limited exception to the general rule that an appeal will not lie unless the district court has conclusively resolved all claims as to all parties in an action. As Plaintiffs acknowledge (Br. 4-8), Rule 54(b) requires a two-step analysis with the first step focused on whether there is a "final judgment" and the second step on whether there is "no just reason for delay." Fed. R. Civ. P. 54(b). Here, Plaintiffs cannot satisfy either step, so their motion must be denied.

#### A.   Under Step One of the Rule 54(b) Analysis, This Action Has Only One Inseparable "Claim"

In arguing that there is a final judgment, Plaintiffs point to the jury verdict addressing Plaintiffs' claims against TAES and assert that the verdict "adjudicated all aspects of those claims." Br. at 4. That assertion is incorrect. To begin with, it

misunderstands the meaning of a "claim" under Rule 54(b).

In *Lowery v. Fed. Express Corp.*, 426 F.3d 817 (6th Cir. 2005), the Sixth Circuit confirmed that "the concept of a 'claim' under Rule 54(b) denotes 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Id.* at 821 (quoting *McIntyre v. First Nat'l Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir. 1978)) (citations omitted). As *Lowery* held, the resolution of one or more causes of action is not a "final judgment" within the meaning of Rule 54(b) if another cause of action arising from the same "aggregate of operative facts," and forming the basis for the same "underlying injury," remains to be resolved by the district court. *Id.* (dismissing appeal for improper certification under Rule 54(b)); *see also Sherrod v. Wal-Mart Stores, Inc.*, 103 F.4th 410, 412-16 (6th Cir. 2024) (dismissing appeal for improper certification under Rule 54(b): "in cases where we have rejected certification, we have done so because the adjudicated and unadjudicated causes of action arose out of the same underlying operative facts").

Here, Plaintiffs' claims against TAES and their claim against Toshiba Corporation unquestionably arise from the same "aggregate of operative facts" and seek recovery for the same "underlying injury." In Plaintiffs' Complaint (ECF 1), Count IV, the sole count against Toshiba Corporation begins by incorporating all of the preceding allegations from the three counts against TAES. (ECF 1, ¶ 196, PageID.53). In Count IV, Plaintiffs allege that Toshiba Corporation provided a

Parent Guaranty obligating it to perform in TAES's stead or to indemnify Plaintiffs against a failure by TAES to perform.  (ECF 1, ¶¶ 196-204, PageID.53-55).  And the Complaint's Prayer for Relief seeks an order jointly requiring TAES and Toshiba Corporation "to pay Consumers Energy and DTE all appropriate damages, including all costs and expenses required to rectify [TAES]'s defective work . . . ."  (ECF 1 at 56, PageID.56).   As another indication that the claims against TAES are inextricably intertwined with the claim against Toshiba Corporation, performance or indemnification by Toshiba Corporation would resolve the claims against TAES, effectively mooting them.   In their current Brief, Plaintiffs acknowledge the relationship between the claims against TAES and those against Toshiba Corporation.  Br. 2-3.

As a general proposition, a claim against a parent company based on its guaranty of a subsidiary's performance is a quintessential example of a claim that cannot be considered separate and distinct from predicate claims against the subsidiary for purposes of Rule 54(b).  That general proposition is especially true where, as here, the parent guaranty in question was required by, and included and incorporated in, the subsidiary's contract with its customer.  (GC26, ECF 1-1 at 30, PageID.88 (requiring TAES to deliver the Parent Guaranty to Toshiba Corporation); PTX-0001 at 11-12 (listing documents attached to the Overhaul Contract and "expressly incorporated into this Contract[,]" including "Exhibit L Form of Parent

3

Guaranty")).

Plaintiffs are also mistaken in contending that their claims against TAES itself are finally resolved by the jury verdict.  First and foremost, the verdict cannot be considered final when TAES has post-verdict motions pending under Rules 50(b) and 59 for judgment as a matter of law and for a new trial, respectively.  *See* Fed. R. App. P. 4(a)(4)(A) (tolling deadline for notice of appeal if timely motion has been made under Rules 50(b) or 59); *Gutzwiller v. Fenik*, 805 F.2d 1034, 1034, 1986 WL 18174, at *1 (6th Cir. 1986) (holding that motions under Rule 50(b) and Rule 59 toll deadline to file notice of appeal such that "[i]f a notice of appeal is filed before a time tolling motion is disposed of, it is a nullity" and [a] new notice of appeal must be filed within thirty days of the entry of the order disposing of the time tolling motion").  In addition, Plaintiffs state that they intend to seek prejudgment interest against TAES (Br. at 8-9), and the hotly contested issue of their entitlement to any such interest (see below) must be resolved before the claims can be final.  *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, No. 22-3828, 2023 WL 2746106, at *1 (6th Cir. Mar. 10, 2023) ("We have found that where 'remedial issues' remain before the district court — including post-judgment motions for prejudgment interest and injunctive relief — 'there is no final order for purposes of review.'").  Indeed, Plaintiffs' arguments for finality are undermined by the very authorities Plaintiffs cite and quote.  Br. at 4 (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1,

7 (1980) (requiring "ultimate disposition of an individual claim"), and *Loc. Union No. 1812, United Mine Workers of Am. v. BethEnergy Mines, Inc.*, 992 F.2d 569, 572 (6th Cir. 1993) (requiring termination of "all issues presented in at least one claim")); *see also* Br. at 6 (citing *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 596 (6th Cir. 2013) (holding that requirement of finality is absolute, not a matter of the district court's discretion, and reviewed de novo on appeal)).

For all of these reasons, the jury verdict against TAES does not constitute a "final judgment" within the meaning of Rule 54(b).  A "final judgment" will not exist in this action until this Court conclusively resolves all claims and issues in this action, including Count IV against Toshiba Corporation.

## B.   Under Step Two of the Rule 54(b) Analysis, *Corrosioneering*'s Factors Demonstrate the Unsuitability of Certification Here

Plaintiffs also cannot satisfy Rule 54(b)'s second-step requirement of establishing that there is "no just reason for delay."  Plaintiffs correctly identify *Corrosioneering, Inc. v. Thyssen Env't Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986), as the leading case setting forth the "nonexhaustive list of factors" relevant to this requirement.  But Plaintiffs fail to acknowledge the high hurdle they face in satisfying these factors and — most important — they fail to apply the factors faithfully.

In *Corrosioneering*, the Sixth Circuit vacated a district court's Rule 54(b) certification and dismissed the appeal, holding that the relationship between a claim

for indemnification and a claim for the underlying liability was sufficiently close that the two needed to be considered in a "unified appeal."  807 F.2d at 1284.  In reaching that holding, the Sixth Circuit reviewed extensive authorities and admonished that "Rule 54(b) is not to be used routinely, or as a courtesy or accommodation to counsel.  'The power which this Rule confers upon the trial judge should be used only "in the infrequent harsh case" as an instrument for the improved administration of justice. . . .'"  *Id.* at 1282 (citations omitted).  The Sixth Circuit added that Rule 54(b) was a response to liberal joinder provisions in the Federal Rules of Civil Procedure but was intended to preserve the historic federal policy against piecemeal appeals.  *Id.* at 1282-83.

Subsequent decisions by the Sixth Circuit and by this Court have been faithful to *Corrosioneering*'s admonishments.  The Sixth Circuit later confirmed that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."  *Carpenter v. Liberty Ins. Corp.*, 850 F. App'x 351, 355 (6th Cir. 2021).  In addition, this Court has held numerous times that certification under Rule 54(b) is "available only in unique situations where the moving party demonstrates delaying an appeal would cause extreme hardship."  *Operating Eng'rs Local 324 Pension Fund v. Laramie Enters., Inc.*, No. 22-10709, 2025 WL 2681973, at *4 (E.D. Mich. Sep. 19, 2025) (Kumar, J.) (quotation marks omitted); *see also Dunigan v. Thomas*, No. 22-11038,

6

2024 WL 889032, at *5 (E.D. Mich. Mar. 1, 2024) (same); *Callahan v. Alexander*, 810 F. Supp. 884, 885-86 (E.D. Mich. 1993) (same).

Application of the *Corrosioneering* factors here establishes that there is no basis to certify the jury verdict for immediate appeal.  Indeed, the factors all weigh heavily against certification.

As to the first factor — which is usually decisive (*see, e.g.*, *Operating Eng'rs*, 2025 WL 2681973, at *5 ("[S]everal courts have given this factor the greatest weight, relying on it solely to deny Rule 54(b) certification.")) — the claims against TAES are closely related to the claim against Toshiba Corporation to such an extent that they are all part of the same "claim" within the meaning of Rule 54(b).  The claim against Toshiba Corporation is predicated upon Plaintiffs' allegation that TAES has failed to comply with its contractual obligations and that Toshiba Corporation has thereafter failed to perform in TAES's stead to indemnify Plaintiffs for TAES's failure to perform.  (Compl. Count IV, ECF 1 at 53-55, PageID.53-55).  In other words, the claims against TAES are an essential element of the claim against Toshiba Corporation, which is precisely why Count IV against Toshiba Corporation begins by incorporating all the allegations against TAES.  The relationship between the claims is underscored by the fact that a failure by Plaintiffs to prove a breach by TAES would be fatal to the claim against Toshiba Corporation, and that a performance or indemnification by Toshiba Corporation would moot or satisfy the

claims against TAES. The corporate relationship between TAES and Toshiba Corporation only further cements the relationship between the claims against them.

The holding in *Corrosioneering* itself is instructive. There, the Sixth Circuit reasoned that liability and indemnity claims in an action were sufficiently related such that they should not be appealed apart from one another. 807 F.2d at 1284. The only difference there was that the question was whether the indemnity claims should be certified notwithstanding unadjudicated liability claims (as opposed to the reverse situation here). The Sixth Circuit held that "by its very nature indemnity is collateral to and dependent upon a finding of liability" (*id.*), thereby confirming that the relationship between the two is such that they should not be split into two or more piecemeal appeals.

As to the second *Corrosioneering* factor, it is certainly possible that further proceedings in this Court could moot any appeal from the jury verdict. Obviously, rulings on the pending Rule 50(b) and 59 motions could moot such an appeal. Furthermore, future proceedings as to Toshiba Corporation could do the same, as they could result in rulings that have issue- or claim-preclusion effect against Plaintiffs, or result in dismissal or satisfaction of Plaintiffs' claims against TAES.

As to the third *Corrosioneering* factor, certification would raise the distinct possibility that the Sixth Circuit would be obliged to consider issues a second time, on a subsequent appeal by Toshiba Corporation. Any rulings against TAES, either

8

liability rulings (e.g., finding breach of contract) or procedural rulings (e.g., requiring a jury trial) do not have preclusive effect as to Toshiba Corporation, a separate party. *See Merial, Inc. v. Sergeant's Pet Care Prods.*, 806 F. App'x 398, 412 (6th Cir. 2020) (reversing application of issue preclusion against subsidiary following litigation against a parent, reasoning "[i]t does not seem to us that a determination as to the rightness of [parent company's] behavior would necessarily entail a determination as to ('and thus') the rightness of [subsidiary's] behavior"). As such Toshiba Corporation will be entitled to revisit those issues in a subsequent appeal.

As to the fourth *Corrosioneering* factor, TAES's counterclaims, if revived by the Court under Rule 59 or by the Sixth Circuit on appeal, could result in a set-off against damages awarded to Plaintiffs. Furthermore, a ruling related to Plaintiffs' claim against Toshiba Corporation could have issue- or claim-preclusion effect on Plaintiffs that could result in a diminution of any damages awarded to Plaintiffs against TAES.

Finally, as to the fifth *Corrosioneering* factor, various miscellaneous considerations, of practicality as well as equity, also weigh heavily against certification. Resolution of the claim against Toshiba Corporation should be achieved in only a matter of a few months, such that there will only be a relatively modest delay in the start of the appellate process for the entire action. Keeping the

action unified, as it has been since Plaintiffs understandably elected to sue both Defendants together, comports with the federal policy against piecemeal appeals and reduces the possibility of inconsistent rulings or other complications from a disjointed progress of claims.  Plaintiffs are substantial corporate entities that face no hardship from being held to the normal appellate processes.  They have not raised any issue about the solvency of either Defendant.  Finally, the two Defendants should not be forced to litigate this action simultaneously in two separate forums, when the claims arise from a single transaction and have been part of a unified action from the start.  Splitting the action at this point raises the specter that Defendants could be whipsawed by inconsistent rulings or by obligations being imposed on the two Defendants at different times.  Certification, in short, invites procedural disorder.  As Plaintiffs put it in their opposition to TAES's motion for certification earlier in this action, any appeal issues "may be addressed in the normal way, in a single appeal after trial."  (Pls.' Opp'n to TAES's Mot. for Cert., ECF 244 at 2, PageID.26800).

### C.   Plaintiffs Seek to Misuse Rule 54(b)

Not only do Plaintiffs fail to satisfy either of the two steps in the Rule 54(b) analysis, but Plaintiffs' Motion and Brief reveal that Plaintiffs are attempting to misuse the Rule.  While Rule 54(b) exists for the purpose of accelerating an appeal when the specified requirements are met (*see, e.g., Corrosioneering*, 807 F.2d at

1281), Plaintiffs here seek to use the Rule not to permit an accelerated appeal but to advance other goals that Plaintiffs believe to be in their interest.  Indeed, Plaintiffs specifically propose that "any concerns about separate appeals can be mitigated" by coordinating future proceedings to allow the parties "to consolidate any resulting appeals."  Br. at 7.  Plaintiffs thus effectively suggest that the Court can defeat the very relief that Plaintiffs are purporting to seek through their Motion.

As a general matter, if a partial final judgment certified for immediate appeal under Rule 54(b) can be consolidated with the remainder of the action, that possibility suggests that the certification was unwarranted.  After all, under *Corrosioneering*'s fifth factor a reason for certifying is to prevent a partial final judgment from being delayed while the remainder of the action moves toward finality; prompt resolution of the remainder of the action suggests that the certification was unnecessary.  Plaintiffs identify a single case in which a partial final judgment certified under Rule 54(b) was consolidated on appeal with the remainder of the action (Br. at 7 (citing *U.S. Citizens Ass'n*, 705 F.3d at 597)), but that opportunity for consolidation arose by happenstance, as the resolution of the remainder of the case became possible when the controlling issue was resolved by an appellate decision in a different case.  *Id.* at 593-94, 596-97.  In the ordinary course, a properly certified Rule 54(b) partial final judgment will be too advanced in the appellate process to be consolidated with an appeal from the remainder of the

11

action.

Plaintiffs seek to misuse Rule 54(b), not genuinely to advance part of the action to an accelerated appeal but to achieve other, supposedly advantageous objectives — specifically, calculation of prejudgment interest, triggering deadlines for post-trial motions, setting the appropriate security, and initiating the process for determining taxable costs. But those other procedural steps are routinely carried out in the ordinary course without Rule 54(b) certifications. And, here, prejudgment interest, security, and costs can all be assessed at the ordinary, appropriate time: the ultimate end of the action in the district court. Addressing those issues prematurely is unproductive, as the circumstances may change before the ultimate end of the action. And, as to TAES's post-trial motions, TAES has already filed them (within the customary period of 28 days after the jury verdict). Indeed, when Plaintiffs filed their Motion they knew that TAES was about to file its post-trial motions because TAES's counsel initiated a meet-and-confer process regarding those motions; only at that time did Plaintiffs disclose their intention to file a motion under Rule 54(b). Plaintiffs then rushed to file their motion before TAES filed its post-trial motions. But Plaintiffs' gamesmanship is for naught: Rule 54(b) exists for a specific reason — to permit an accelerated appeal from a partial final judgment where the Rule's requirements are met — not to rewrite the ordinary processes dictated by the Federal Rules of Civil Procedure.

## II.   GC28(b) of the Overhaul Contract Bars Prejudgment Interest

In their Brief (at 8-10), Plaintiffs request that this Court impose prejudgment interest on the damages awarded by the jury, but that request is foreclosed by the Contract between Plaintiffs and TAES.  In particular, GC28(b) expressly provides: "Other than with respect to the Contractor's obligations to pay liquidated damages to the Owner, in no event shall either Owner or Contractor be liable to the other, whether arising under in breach of contract, tort (including negligence), strict liability, or otherwise, for . . . cost of money, loss of capital or revenue, or for any special, incidental, exemplary or other consequential loss or damage."  (ECF 1-1 at 33, PageID.90; *see also Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 28 (Mich. 2005) ("In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument."); *see also Penncro Associates, Inc. v. Spring Spectrum, L.P.*, 499 F.3d 1151, 1157 (10th Cir. 2007) (discussing "reluctan[ce] to shed ordinary meanings" as it related to "consequential damages")).

There can be no serious doubt that GC28(b)'s categorical language precludes prejudgment interest.  The Supreme Court of Michigan has repeatedly held that prejudgment interest under MCL 600.6013, the provision Plaintiffs invoke (Br. at 8-9), compensates a prevailing party "for the lost use of funds."  *See, e.g., Gordon Sel-Way, Inc. v. Spence Bros., Inc.*, 475 N.W.2d 704, 713 (Mich. 1991); *Old Orchard*

*by the Bay Assocs. v. Hamilton Mutual Ins. Co.*, 454 N.W.2d 73, 76 (Mich. 1990) ("The [prejudgment-interest] statute serves the purpose of compensating the prevailing party for loss of the use of the funds awarded as a money judgment, as well as offsetting the costs of bringing a court action."); *Farmers Ins. Exch. v. Titan Ins. Co.*, 651 N.W.2d 428, 432 (Mich. Ct. App. 2002) ("The purpose of [the prejudgment-interest] statute is to compensate the prevailing party for loss of use of the funds awarded as a money judgment and to offset the costs of litigation."). The United States Supreme Court and the Sixth Circuit have said the same. *See, e.g.*, *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered . . . ."); *Wynn Oil Co. v. American Way Serv. Corp.*, 1995 WL 431019, *3 (6th Cir. July 20, 1995) ("A court may compensate a successful plaintiff for plaintiff's opportunity cost, or the return it could have made on an alternative investment of the funds spent on the foregone opportunity. This may be done by awarding a plaintiff either the defendant's actual investment income or an amount of prejudgment interest.") (cleaned up).

There can also be no doubt that under Michigan law prejudgment interest can be voluntarily relinquished by contract. In *Old Orchard by the Bay*, the Supreme Court of Michigan confirmed: "Where there is a contractual agreement by the parties regarding the entitlement to interest, or the rate of interest to be awarded, in

14

a dispute founded on a contract, the question of interest is one of the intent of the parties." 454 N.W.2d at 76, n.10; *see also Bobchick v. Grange Ins. Co. of Michigan*, No. 19-12467, 2021 WL 927370, *4-5 (E.D. Mich. Mar. 11, 2021) (declining to apply the prejudgment interest statute to supersede a contractual limitation on prejudgment interest).

None of Plaintiffs' arguments to the contrary has any merit.

While prejudgment interest may have once been mandatory *in contract disputes lacking a contractual waiver*, legislative revisions have since expressly softened the application of Michigan's prejudgment-interest statute.  The Sixth Circuit held in *Transp. Ins. Co. v. Citizens Ins. Co. of Am.*, 574 F. App'x 607, 613 (6th Cir. 2014), that Michigan's prejudgment interest statute, having undergone an amendment in 2001, is now "less mandatory than it formerly was" — i.e., not mandatory.  Plaintiffs conspicuously fail to quote Michigan's prejudgment-interest statute or acknowledge its amendment.  (*Cf.* Pls.' Opp'n to Mot. for Summ. J., ECF 229 at 33 n.20, PageID.25686 (Plaintiffs arguing that the Sixth Circuit in *Transp. Ins. Co.* "overread the significance of that change[]")).

The cases Plaintiffs rely on to support their argument that prejudgment interest is mandatory (Br. at 9 & n.3) are based on the obsolete pre-amendment statutory language which states that "interest *shall be* allowed" as opposed to the current language as amended in 2001 that "interest *is* allowed."  *See, e.g., Centria Home*

*Rehab., LLC v. Allstate Ins. Co.*, No. 365313, 2024 WL 4820775, at *4 (Mich. Ct. App. Nov. 18, 2024) (basing its holding that statutory prejudgment interest is mandatory on *Farmers Ins. Exch.*, 651 N.W.2d at 460, stating that "[i]n relevant part, MCL 600.6013(1) provides that 'interest *shall be* allowed on a money judgment . . .") (emphasis added); *United States Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 492 (6th Cir. 2003) (relying on *Farmers Ins. Exch.* and two additional pre-amendment Michigan Court of Appeals cases).

Plaintiffs' citation to *Vaughn Custom Sports, Inc. v. Piku*, No. 12-13083, 2014 WL 6455582, at *1-2 (E.D. Mich. Nov. 17, 2014) is particularly informative.  That decision cites solely to *Hadfield v. Oakland Cty. Drain Comm'r*, 554 N.W.2d 43, 46 (Mich. Ct. App. 1996), to support the proposition, quoted by Plaintiffs, that "an award of prejudgment interest is 'mandatory' under state law."  *Id*.  But *Hadfield* explains that Michigan's prejudgment-interest statute is mandatory because "[t]he use of the word 'shall' in a statute connotes mandatory duty or requirement" and "[t]herefore, imposition of statutory interest pursuant to [Michigan's prejudgment interest statute] is mandatory . . . ."  *Hadfield*, 554 N.W.2d at 46.  The Michigan legislature's removal of the term "shall" from the prejudgment-interest statute thus served to clarify that the statute is *not* mandatory, as the Sixth Circuit recognized in the *Transp. Ins. Co.* case.

Decisions holding that parties waived prejudgment interest in full or in part

by contract further confirm that prejudgment interest is not mandatory and has never been mandatory to the extent of overriding contractual waivers. *See Bobchick v. Grange Ins. Co.*, 2021 WL 927370, at *4 (denying award of prejudgment interest based on parties' contractual limitation); *Transp. Ins. Co. v. Citizens Ins. Co. of Am.*, No. 08-15018, 2013 WL 4604126, at *2 (E.D. Mich. Aug. 29, 2013), *aff'd* (July 25, 2014) (denying Plaintiffs' request for prejudgment interest and finding that a settlement agreement expressly "limit[ed] the recovery to the total sum of $6 million"); *Old Orchard by the Bay*, 454 N.W.2d at 76, n.10 (acknowledging prior to 2001 amendment that parties can waive prejudgment interest by contract); *Bent v. Bostwick*, 384 N.W.2d 124, 125 (Mich. Ct. App. 1986) (affirming a denial of prejudgment interest as "this Court has refused to hold an insurer liable for prejudgment interest on judgment amounts which exceed the liability policy limit in the insurance policy").

Although this Court denied Defendants' motion for summary judgment as to prejudgment interest (*see* Br. at 9), that denial does not amount to a binding holding that prejudgment interest is mandatory or warranted and, in any event, the Court is not bound by that pre-trial decision. *See Welker v. Goodyear Tire Co.*, 117 F.3d 1421, 1421, 1997 WL 369450, at *3 (6th Cir. 1997) ("The district court is simply not bound by its pretrial denial of a summary judgment after it actually considers the evidence ultimately presented at trial."); *Redmon v. Sinai-Grace Hosp.*, No. 12-

17

15462, 2014 WL 1746085, at *5 (E.D. Mich. Apr. 30, 2014) ("[A] denial of summary judgment has no res judicata effect, and renewed or successive motions are permitted where good reasons exist for them."). The Court's denial on summary judgment turned in large part on whether prejudgment interest may be considered to be consequential damages (ECF 252 at 22-25, PageID.27079-82); but this is beside the point. GC28(b) plainly waives more than just consequential damages. In capaciously broad language (e.g., "in no event," "whether arising under in breach of contract, tort (including negligence), strict liability, or otherwise"), GC28 waives not just consequential damages but all sorts of other forms of damages and loss, including "special, incidental, [and] exemplary" loss or damage. (ECF 1-1 at 33, PageID.90). Exemplary damages, akin to punitive damages (*see Peisner v. Detroit Free Press*, 364 N.W.2d 600, 605 (Mich. 1984)), certainly would not qualify as "consequential" damages in any technical legal sense, but they are unquestionably waived in GC28(b); similarly "cost of money" or "loss of capital or revenue" are waived whether or not they are consequential damages. *See also Sullivan Indus., Inc. v. Double Seal Glass*, 480 N.W.2d 623, 630-32 (Mich. Ct. App. 1991) (explaining "[t]he difference between incidental and consequential damages" and separately construing exemplary damages).

And, certainly, the heading of GC28(b) does not limit the scope of the waiver, as paragraph 7 of the Contract (ECF 1-1 at 5, PageID.64) expressly provides that the

descriptive headings in the Contract "are included for convenience of reference only" and "shall not modify or restrict the interpretation and construction of any of the terms or provisions hereof."  GC28(b) must therefore be given the full effect of its terms, including the waiver of any form of "cost of money" or "loss of capital or revenue."

### III. Procedures for Adjudicating Count IV Must Allow Toshiba Corporation To Put on a Full Defense in a Bench Trial

Toshiba Corporation agrees that the parties and the Court need to consider the procedures for adjudicating Count IV against Toshiba Corporation, but Plaintiffs' Brief (at 10) misapprehends the scope of that exercise.  Toshiba Corporation is a Defendant with its own rights, separate and apart from those of TAES.  The Court has already concluded that Toshiba Corporation is entitled to a bench trial to adjudicate the claims against it.  (*See* Order Denying Defs.' Mot. to Strike Jury Demand, ECF 242 at 5, PageID.26763 ("The parties do not dispute that [the jury-trial waiver] applies to Plaintiffs' claims against Toshiba under the Guaranty.")).  Having indisputably contracted out of a jury trial, Toshiba Corporation cannot be bound by any aspect of the jury verdict against TAES.

Furthermore, Toshiba Corporation should not be constrained by strategic choices TAES may have made on account of TAES being subjected to a jury trial.  For example, cognizant that the factfinder adjudicating the claims relating to it was a jury of lay citizens, TAES presented its case in a manner it believed best suited to

that factfinder.  It made strategic choices that TAES, or any other litigant, may not have made in the context of a bench trial.  *Thompson v. Parkes*, 963 F.2d 885, 888 (6th Cir. 1992) ("Any good trial lawyer will testify that there are significant tactical differences in presenting and arguing a case to a jury as opposed to a judge.") (quoting *Hildebrand v. Board of Trustees*, 607 F.2d 705 (6th Cir. 1979)).  It is a truism that a litigant may seek to present a case less technical to a jury than the litigant may present to a judge.  A litigant may also take a different approach in witness examination, both direct and cross, and in trial advocacy more generally. Here, TAES made innumerable strategic decisions informed by the fact that it was presenting its case to a jury, including its selection of witnesses (e.g., the number, nationality, native language, and in-person availability), the level of granularity with which to address technical details, and untold other considerations.  And TAES, quite obviously and expressly, truncated its case due to concerns about jury burnout, a choice encouraged by the Court.  (*See* ECF 376, Dec. 10, 2025 Jury Instruction Conf. Tr. 71:7-9, PageID.42784; *id.* Tr. 73:17-25, PageID.42786).  TAES's case was tailored to its audience, and Toshiba Corporation, particularly with its case being adjudicated by the Court rather than a jury, should not be bound by TAES's strategic choices.

Toshiba Corporation, in short, is entitled to present its own defense, tailored to its factfinder.  *See Martin v. Wilks*, 490 U.S. 755, 762 (1989) (confirming "deep-

rooted historic tradition that everyone should have his own day in court"). As such, contrary to Plaintiffs' apparent assumption (Br. 10), the jury trial relating to TAES cannot simply be applied as against Toshiba Corporation.

Nor does anything in the Parent Guaranty alter this analysis. In their Brief (at 1-2), Plaintiffs once again misplace reliance upon this sentence in Paragraph 7 of the Parent Guaranty:

> In the event there is any dispute under the Contract that relates to a sum being claimed under this Guaranty, which dispute is submitted to dispute resolution in accordance with the procedures specified in the Contract, the obligations under the Guaranty shall be suspended pending the outcome of such dispute resolution procedures and the Guarantor further agrees that the results of such procedures shall be conclusive and binding on it for purposes of determining its obligations under this Guaranty.

(ECF 1-3 at 3, PageID.172). But that sentence relates to the dispute resolution procedures specified in the Overhaul Contract, namely GC9 (Disputes), which specifies a procedure for "written notice of any dispute not resolved in the normal course of business" and then specifies that "[t]he Owner and Contractor shall thereupon attempt in good faith to resolve such dispute promptly by negotiations between executives who have the authority to settle the dispute." (ECF 1-1 at 17, PageID.74). The sentence in Paragraph 7 of the Parent Guaranty simply ensures that the resolution of a dispute under GC9's executive-negotiation process will be conclusive and binding on Toshiba Corporation, thereby ensuring that any resolution reached by executives of the parties to the Overhaul Contract will apply to Toshiba

21

Corporation's obligations under the Parent Guaranty.

Plaintiffs' interpretation of the sentence in Paragraph 7, under which a jury trial verdict against TAES somehow becomes conclusive and binding on Toshiba Corporation, is riddled with problems.  First and foremost, the text of the sentence does not support Plaintiffs' interpretation or say anything about a jury trial.  The interpretation would also effectively nullify the jury-trial waiver.  Furthermore, if the sentence in Paragraph 7 really applied to the present circumstances, Toshiba Corporation's obligations under the Parent Guaranty would have been suspended ever since the dispute arose and would remain suspended until "the outcome" of the case against TAES, which has not occurred and will not occur until this action fully runs its course (i.e., after all appeals have been exhausted).  (ECF 1-3 at 3, PageID.172).  Yet Plaintiffs have been alleging and arguing all along, from before this action commenced and throughout it, that Toshiba Corporation's Parent Guaranty is operative (not suspended).  (*See* Compl. ¶157, ECF 1 at 42, PageID.42 (alleging that on December 10, 2021, Plaintiffs "invoked the Parent Guaranty by serving a demand on Toshiba Parent")).  In fact, Toshiba Corporation's obligations were suspended only for the period of the dispute-resolution procedures specified in GC9 (i.e., executive negotiations).  (*See* Compl. ¶¶ 153-54, 156, ECF 1 at 41-42, PageID.41-42 (alleging that Plaintiffs invoked the Overhaul Contract's dispute resolution protocols under GC9 on July 30, 2021 and on October 6, 2021 "advised

Toshiba that the 60-day period under GC9 had expired without resolution of the dispute")).

Toshiba Corporation, in short, is entitled to present a defense to Count IV and the jury verdict against TAES is not relevant to that defense.  No element of the claim against Toshiba Corporation can be satisfied by the jury verdict given that the Plaintiffs have waived a jury trial as to any claims against Toshiba Corporation.  In the bench trial against Toshiba Corporation, Plaintiffs must be required to prove every element of their case against Toshiba Corporation, including any underlying liability of TAES.  As part of their presentation, Plaintiffs may choose to offer evidence of attorneys' fees and other costs they seek.  In addition, of course, Toshiba Corporation is entitled to offer additional evidence, beyond what was offered by TAES, in support of Toshiba Corporation's own defense.  Without limiting the scope of that defense in any way, Toshiba Corporation is entitled to present evidence that it satisfied its obligations under the Parent Guaranty by offering performance to remedy any alleged breaches of the Overhaul Contract by TAES.

After the introduction of additional evidence relevant to the claim against Toshiba Corporation, the Court should set a timetable for the parties to submit proposed findings of fact and conclusions of law, as would be done in connection with any other bench trial. *See Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 792 (6th Cir. 1984) ("F. R. Civ. P. 52(a) imposes a duty upon the District

23

Court Judge, before whom a case is tried without a jury, to 'find the facts specially and state separately its conclusions of law thereon.'").  Those proposed findings of fact and conclusions of law may address liability as well as all forms of damages. This process, which can be done efficiently, is an unavoidable consequence of the Court's decision, over Defendant's strenuous objection, that Plaintiffs' claims against TAES (and TAES's counterclaims) were to be tried to a jury notwithstanding the broad jury-trial waiver in Exhibit L of the Overhaul Agreement and in Paragraph 7 of the Parent Guaranty.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Enter Partial Final Judgment.

Dated:  January 26, 2026

Respectfully submitted,

**WHITE & CASE**

By:  */s/ Christopher M. Curran*
Christopher M. Curran

**FOLEY & LARDNER LLP**

Nicholas J. Ellis (P73174)
500 Woodward Avenue, Suite 2700
Detroit, MI  48226-3489
(313) 234-7100
nellis@foley.com

Jennifer M. Luther
150 East Gilman Street, Suite 5000
Madison, WI 53703
(608) 258-4215
jluther@foley.com

Christopher M. Curran
Eric Grannon
J. Frank Hogue
Holly Zheng
701 Thirteenth Street, NW
Washington, DC  20005
(202) 626-3600
ccurran@whitecase.com
egrannon@whitecase.com
fhogue@whitecase.com
holly.zheng@whitecase.com

*Attorneys for Toshiba America Energy Systems Corporation and Toshiba Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2026 I filed the foregoing document and this Certificate of Service with the Court using the ECF system, which sent notice of filing to all attorneys of record.

*/s/ Christopher M. Curran*
Christopher M. Curran
