UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONSUMERS ENERGY CO. and
DTE ELECTRIC CO.,

Plaintiffs,

Case No. 22-10847

v.

Hon. F. Kay Behm

TOSHIBA AMERICA ENERGY
SYSTEMS CORP. and
TOSHIBA CORP.,

Defendants.
_______________________________/

**OPINION AND ORDER ON MOTION TO SET AMOUNT OF BOND AND TO STAY EXECUTION OF JUDGMENT PENDING APPEAL (ECF No. 446)**

## I. PROCEDURAL HISTORY

Defendant, Toshiba America Energy Systems Corporation (TAES) brings a motion to set the amount of bond and stay execution of the judgment pending appeal. (ECF No. 446). TAES argues that Michigan's statutory bond cap applies as a matter of substantive law, thus limiting the amount of the bond that it must post to stay execution of the judgment pending appeal. TAES also argues that Federal Rule of Civil Procedure 62(f) reinforces that the court should apply Michigan's cap. In response, Plaintiffs contend that state

law limits on bonds do not apply in federal court and that Rule 62(f) does not apply. The court held a hearing on November 5, 2026.

## II. ANALYSIS

### A. Does the Michigan Cap on Bonds Apply in Federal Court?

In this diversity action, Michigan law governs substantive matters. Michigan has capped by statute the amount of a bond necessary to stay execution of a judgment pending appeal. Mich. Comp. Laws § 600.2607(1). TAES proposes posting an appeal bond in the amount of the current cap, $37,467,999.00.

On the other hand, Federal Rule of Civil Procedure 62 governs when proceedings to enforce a judgment shall be stayed. Rule 62(b) provides that: "At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Under Rule 62, "the court has no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond." *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-CV-00463, 2019 WL 13500307, at *1 (M.D. Tenn. Feb. 26, 2019) (quoting *Buckhorn Inc. v. Orbis Corp.*, Case No. 3:08-cv-459, 2014 WL 4377811, at *1 (S.D. Ohio Sept. 3,

2014)); *see also Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, No. 2:19-CV-2238, 2021 WL 858728, at *2 (S.D. Ohio Mar. 8, 2021) (district courts have "discretion to fix the amount of the bond or waive the bond requirement"); *Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006) ("The bond secures the judgment against insolvency of the judgment debtor and is usually for the full amount of the judgment, though the district court has discretion in setting the amount."). As a rule, a full bond "should almost always be required." *Kaufman v. Knipp*, No. 3:21-CV-1128-DAC, 2024 WL 692691, at *2 (N.D. Ohio Feb. 20, 2024) (quoting *Maxum Indem. Co. v. Drive W. Ins. Servs., Inc.*, No. 1:13-CV-191, 2019 WL 340107, at *1 (S.D. Ohio Jan. 28, 2019)). A full bond "include[s] the full amount owed under the award, post-judgment interest, attorney's fees and costs." *Verhoff v. Time Warner Cable, Inc.*, No. 3:05CV7277, 2007 WL 4303743, at *2 (N.D. Ohio Dec. 10, 2007) (citing cases).

TAES argues that there is no conflict between Rule 62(b) and § 600.2607(1) because Rule 62 is silent as to the amount of any appeal bond. Thus, TAES argues that this "gap" in Rule 62 regarding the amount of the bond is properly filled by Michigan law. Plaintiffs argue, in contrast, that there is no authority holding that state law caps on appeal bonds limit the court's

discretion to set a bond under Rule 62(b). Plaintiffs cite a number of cases from across the country holding that state law caps on supersedeas bonds do not apply in federal court diversity actions. *See e.g., Civelli v. Mulacek*, No. 26-20183, 2026 WL 3057315 (5th Cir. Oct. 13, 2026); *Kelley v. BMO Harris Bank N.A.*, No. 19-cv-1756, 2023 WL 4740927, at *2 (D. Minn. July 25, 2023) (the court rejected the application of a $150 million cap on appeal bonds under Minnesota state law in a matter involving a $560 million judgment); *Ind. GRQ, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. 3:21-CV-227 DRL, 2024 WL 1231260, at *33 (N.D. Ind. Mar. 22, 2024) (holding Indiana statutory bond cap cannot be applied in federal diversity action); *Universal Life Ins. Co. v. Lindberg*, No. 20-cv-681, 2023 WL 6554451, at *4 (M.D.N.C. Sept. 21, 2023) (rejecting application of state law cap of $25 million on supersedeas bonds).

As the Supreme Court recently explained, in a diversity action where the court faces whether to apply state or federal law, the "Rules of Decision Act directs federal courts to apply state substantive law, leaving federal law to cover the rest." *Berk v. Choy*, 607 U.S. 187, 192 (2026) (citing 28 U.S.C. § 1652). The Court observed that following that direction may be more challenging that it appears, "because determining whether a state law is substantive requires a court to enter '*Erie*'s murky waters.'" *Id*. (quoting *Shady*

*Grove Orthopedic Associates, P. A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010)). The Court went on to describe the proper inquiry when a Federal Rule of Civil Procedure is "on point":

> Yet when a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether. That is because the Rules of Decision Act dictates that state substantive law must yield if the Constitution, a treaty, or a statute "otherwise require[s] or provide[s]." [28 U.S.C.] § 1652. And the Rules Enabling Act, which authorizes the Supreme Court to adopt uniform rules of procedure for district courts, provides for the application of federal law. [28 U.S.C.] § 2072(a); *see also* Fed. Rule Civ. Proc. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts ... "). Thus, a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test. *See Hanna* [*v. Plumer*, 380 U.S. 460, 469-474 (1965)].
>
> Analyzing whether a Federal Rule displaces state law is straightforward. We first ask whether the Federal Rule "answers the question in dispute." *Shady Grove*, 559 U.S. at 398, 130 S.Ct. 1431. In doing so, we interpret the Federal Rules the same way we interpret federal laws more generally: by giving them their "plain meaning." *Walker v. Armco Steel Corp*., 446 U.S. 740, 750, n. 9, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). If a Federal Rule answers the disputed question, it governs, unless it "exceeds statutory authorization or Congress's rulemaking power." *Shady Grove*, 559 U.S. at 398, 130 S.Ct. 1431.

*Id.*; *see also Albright v. Christensen*, 24 F.4th 1039 (6th Cir. 2022).

In proceeding under this inquiry, the court finds the decision in *Burlington Northern Railroad Co. v. Woods*, 480 U.S. 1 (1987) to be instructive. There, the plaintiffs brought tort claims in Alabama state court against a defendant who removed those claims to federal court on diversity grounds. *Id*. at 2. The plaintiffs won a money judgment at trial. *Id*. The defendant posted bond to stay the judgment pending appeal, and the court of appeals affirmed the judgment. *Id*. Under Federal Rule of Appellate Procedure 38, federal appellate courts have discretion to award damages or costs to appellees in frivolous appeals. Alabama law, however, mandates that if a monetary judgment for which the appellant posted bond pending appeal is affirmed without modification, the Alabama courts must award a penalty to the appellee in the amount of ten percent of the damages award. *Id*. at 3-4. The Supreme Court held that Rule 38 and Alabama law directly conflicted because the Alabama law interfered with Rule 38's "discretionary mode of operation" and because "the purposes underlying the Rule are sufficiently coextensive with the asserted purposes of the Alabama statute to indicate that the Rule occupies the statute's field of operation so as to preclude its application in federal diversity actions." *Id*. at 7. Thus, because there was a conflict and because Rule 38 was valid under the Constitution

and the Rules Enabling Act, Rule 38 displaced the Alabama statute in federal diversity cases. *Id*. at 8.

Similarly here, as explained above, the court has broad discretion in setting the bond amount under Rule 62(b). In this vein, the Sixth Circuit has found that "Rule 62(d)[1] entitles a party who files a *satisfactory* supersedeas bond to a stay of money judgment as a matter of right." *Arban v. W. Pub. Corp*., 345 F.3d 390, 409 (6th Cir. 2003) (emphasis added) (citing *Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980)); *see also Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 351 (E.D. Mich. 1998) (A stay as of right is "contingent upon the posting of a court approved supersedeas bond."). The court's holding that the bond must be satisfactory makes sense based on the language in the current and former rule that the bond or other security is subject to the court's approval. This language also suggests that the court has discretion to approve bonds it finds "satisfactory." Conversely, if no bond is posted or if a posted bond is found to

---

[1] Rule 62(b) used to be found in Rule 62(d) before a reorganization of the rules. It provided as follows: "If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond." *Tri Cnty. Wholesale Distributors, Inc. v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 171 (S.D. Ohio 2015).

be unsatisfactory, no stay need be granted. *Physicians Ins. Cap., LLC v. Praesidium All. Grp., LLC*, No. 4:12CV1789, 2013 WL 5232817, at *1 (N.D. Ohio Sept. 16, 2013). In contrast, the Michigan statute sets a direct cap on the amount of an appeal bond, regardless of the size of the judgment. Thus, in the court's view, applying the mandatory cap on appeal bonds under Michigan law would directly conflict with the court's ability to exercise its discretion to approve bonds or other security under Rule 62(b).

Moreover, the purpose of Rule 62(b) is sufficiently coextensive with the purpose of the Michigan statute to conclude that "the Rule occupies the statute's field of operation so as to preclude its application in federal diversity actions." *Burlington*, 480 U.S. at 7. The purpose of the bond requirement in Rule 62 is to protect "the non-appealing party 'from the risk of a later uncollectible judgment' and also 'provides compensation for those injuries which can be said to be the natural and proximate result of the stay.'" *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 351 (E.D. Mich.1998) (quoting *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988)). It is evident that the Michigan scheme for setting an appeal bond has a similar purpose, as the Michigan Court Rules provide that "the dollar amount of a stay or appeal bond in a civil action or probate proceeding must be set by the trial court in an amount

adequate to protect the opposite party." Mich. Ct. R. 7.209(B)(1). While the adequacy of that amount in the Michigan Court Rule is subject to the statutory cap, the purpose of protecting the appellee is similarly evidenced in § 600.2607 itself, given its provision that where an appellee shows "that the party for whom the bond to stay execution has been limited is purposefully dissipating or diverting assets outside of the ordinary course of business for the purpose of avoiding ultimate payment of the judgment, the court shall rescind the limitation granted under subsection (1)." Mich. Comp. Laws § 600.2607(2). Thus, the court finds that the purpose of Rule 62(b) is "sufficiently coextensive" with the purpose of the Michigan bond cap "to indicate that the Rule occupies the statute's field of operation so as to preclude [the statute's] application in federal diversity actions." *See Burlington*, 480 U.S. at 7.

The court also concludes that Rule 62(b) regulates matters which can reasonably be classified as procedural, thus satisfying the constitutional standard for its validity. Like the Rule at issue in *Burlington*, the "choice made by the drafters of the Federal Rules in favor of a discretionary procedure affects only the process of enforcing litigants' rights and not the rights themselves." *Id.* at 8. Based on the foregoing, the court concludes that Rule

62(b) answers the disputed question before the court and does not exceed statutory authorization or Congress's rulemaking power. Accordingly, the court's discretionary authority under Rule 62(b) governs the question of the amount of the appeal bond, rather than the Michigan statutory bond cap.

The parties dispute the applicability of *Markowitz & Co. v. Toledo Metro. Hous. Auth.*, 74 F.R.D. 550 (N.D. Ohio 1977), so the court addresses this case briefly. In *Markowitz*, a defendant argued that it was entitled to a stay of judgment without posting a bond because an Ohio law exempted governmental entities from bond requirements, which the defendant argued was a "rule of substance." *Id.* at 550. *Markowitz* rejected that argument, holding that the Ohio bond rule was a matter of procedure that did not apply in federal court. As the court put it, "[j]udgment has been rendered[,] the rights and obligations of the parties have been declared," and the state rule "in no way bears upon the question [under *Erie*] 'whether the litigation would come out one way in the federal court and another way in the state court.'" *Id.* at 551 (quoting *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 536-37 (1958)). TAES points out, however, that *Markowitz* is distinguishable because it did not involve a statutory cap on bonds and because it improperly failed to follow a Sixth Circuit decision in *Joseph Skillken & Co. v. City of Toledo*, 528

F.2d 867, 870 (6th Cir. 1975).[2] This court need not weigh in on whether *Markowitz* improperly disregarded *Skillken* because neither case addressed a state statutory bond cap and its intersection with Rule 62(b). Accordingly, the court finds neither case directly applicable. Instead, the court finds that this case is properly governed by *Berk* and *Burlington*, as discussed in detail above.

B. Does Rule 62(f) Apply?

Rule 62(f) provides that "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." Fed. R. Civ. P. 62(f). According to TAES, Rule 62(f) applies and execution on the TAES judgment should be stayed and the bond approved under the Michigan statutory cap.

---

[2] The *Skillken* court, in a footnote commenting on the large bond required by the district court, pointed out that Ohio law exempts municipalities and their officers from giving bonds. It also cited the decision of *Marrow v. City of Ferguson*, 114 F. Supp. 755, 756 (E.D.Mo.1953), aff'd, 210 F.2d 520 (8th Cir. 1954), in which the district court under a Missouri statute similar to Ohio's, held that the statute created substantive rights, not merely procedural, and dispensed with bond in an appeal. The court further observed that no damages had been awarded below and thus, it was not understandable why such a high bond was required, also noting the district court's discretion to issue a stay without bond. *Skillken*, 528 at 870 n. 1. The court does not appear to have actually addressed whether the bond was properly required.

Plaintiffs point out that under Michigan law, "a judgment by itself does not establish a lien against property." *Shoaff v. Est. of Baldwin*, No. 270693, 2008 WL 2596325, at *5 (Mich. Ct. App. July 1, 2008); *see also George v. Sandor M. Gelman, P.C.*, 201 Mich. App. 474, 477 (1993) ("A judgment, by itself, does not create a lien against a debtor's property."). In order to avoid the conclusion that the inquiry ends here because a judgment is not a lien under Michigan law, TAES points to two circuit court decisions that have determined that Rule 62(f) applies where a lien under state law "can be procured by minor ministerial acts." *Rodriguez-Vazquez v. Lopez-Martinez*, 345 F.3d 13, 14 (1st Cir. 2003) (per curiam); *see also MM Steel, L.P. v. JSW Steel (USA) Inc.*, 771 F.3d 301, 303 (5th Cir. 2014) ("Under the prevailing view of Rule 62(f), a judgment is a lien if a judgment creditor is only required to perform mere 'ministerial acts' to transform the judgment into a lien.").

TAES explains that under Michigan law, a judgment lien attaches when a "notice of judgment lien" is recorded with the register of deeds. Mich. Comp. Laws § 600.2803. The clerk of court "shall certify a notice of judgment lien" that has been signed by the judgment creditor or their attorney and includes certain specified information. Mich. Comp. Laws § 600.2805. TAES argues that in using the phrase "shall certify," Michigan law limits the clerk to

a ministerial role in certifying a judgment lien where the required information is included in the notice. Thus, TAES concludes, because a simple recording process is all that distinguishes the judgment against TAES from a lien, Rule 62(f) requires that state law on stays of execution of judgments be applied here.

Few cases discuss the operation of Michigan law and Rule 62(f). Two district court cases have briefly addressed the issue. In the first case, the district court held that "[b]ecause the judgment does not operate as an automatic lien on Plaintiff's property under Michigan law, Plaintiff is not entitled to a stay under Rule 62(f)." *City of Detroit v. TXU Energy Retail Co., L.P.*, 2006 U.S. Dist. LEXIS 91384, *12 (E.D. Mich. Dec. 19, 2006) (Cleland, J.). In the second case, the court concluded that where the plaintiff has not recorded a judgment lien on the defendant's real property, because the "judgment is not a lien on Defendant's property under Michigan law, a stay is not authorized or warranted under Fed. R. Civ. P. 62(f)." *Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co.,* LLC, No. 13-14909, 2016 WL 8257782, at *1 (E.D. Mich. Mar. 11, 2016) (Cox, J.). The conclusions reached in these cases, though short on analysis, are supported by other case law within the Sixth Circuit. For example, in *Cadence Bank, N.A. v. Latting*

*Rd. Partners, LLC*, No. 09-2540, 2010 WL 4261230 (W.D. Tenn. June 22, 2010), the court rejected application of Rule 62(f) to judgments rendered in Tennessee because state law required a process of certification and recordation to establish a lien. *Id*. at *2. The court explained that "Rule 62(f) does not create a basis for a stay where an intermediary step—such as recordation—is required by state law in order to create a lien against a judgment debtor's property." *Id*. Likewise, in *Kennedy v. City of Zanesville*, the court held that Rule 62(f) does not apply to judgments rendered in Ohio because creating a lien requires a process of certification and county recordation; therefore, a "judgment in favor of the Plaintiffs does not independently constitute a lien on the Defendant's property pursuant to Rule 62(f)." No. 03-cv-1047, 2008 WL 3993894, at *1 (S.D. Ohio Aug. 20, 2008). Similarly here, the court finds that that Rule 62(f) does not apply because Michigan law holds that a judgment is not a lien and requires additional affirmative steps including certification and recordation to establish a lien.

Even applying the "ministerial acts" test advocated by TAES, the court finds that more than ministerial acts are required under Michigan law. Other courts have reached similar conclusions. For example, "prepar[ing] a judgment lien certificate and fil[ing] such certificate in the specific land

records where the debtor's property is located," is more than a "ministerial act." *Marandino v. D'Elia*, 151 F.R.D. 227, 229 (D. Conn. 1993), aff'd 7 F.3d 221 (2d Cir. 1993); *see also Ribbens Intern., S.A. de C.V. v. Transport Intern. Pool, Inc.*, 40 F.Supp.2d 1141, 1143 n. 2 (C.D. Cal. 1999) ("[62(f) ] does not apply because .... under California law a judgment creditor must record the judgment or an abstract thereof in order to transform [it] into a lien on property."). "Put plainly, if a judgment is not 'in and of itself' a lien on property, Rule 62(f) is inoperable." *United States v. O'Callaghan*, 805 F. Supp. 2d 1321, 1329 (M.D. Fla. 2011) (quoting *Elias Bros. Restaurants, Inc. v. Acorn Enterprises, Inc.*, 931 F. Supp. 930, 939 (D. Mass. 1996)). Likewise, the court concludes that the required additional steps of certifying and recording the judgment under Michigan law are more than "ministerial." Thus, Rule 62(f) does not apply.

Additionally, the "plain" purpose of Rule 62(f) is to ensure that "judgment creditors [are] afforded security while judgment debtors appeal." *United States v. O'Callaghan*, 805 F. Supp. 2d 1321, 1329 (M.D. Fla. 2011) (quoting *Castillo v. Montelepre, Inc.*, 999 F.2d 931, 942 (5th Cir. 1993)). For this reason, where the security afforded by a lien on real estate is insufficient when considering the amount of the judgment or such real estate does not

exist in the state, courts have found that a stay under Rule 62(f) is not appropriate. *See e.g.*, *Indiana GRQ, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. 3:21-CV-227 DRL, 2024 WL 1231260, at *33 (N.D. Ind. Mar. 22, 2024) (Rule 62(f) did not apply where the defendant did not identify any real estate in the state “that would secure the judgment in this manner to secure a stay under Rule 62(f).”); *Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.,* No. 19-CV-1756 (WMW), 2023 WL 4740927, at *2 (D. Minn. July 25, 2023 (“Rule 62(f) is intended to only give an automatic stay in accordance with state law in those cases in which the judgment creditor has the security of his lien” on the judgment debtor’s real property (quoting *Wilmer v. Bd. of Cnty. Comm’rs of Leavenworth Cnty., Kan.*, 844 F. Supp. 1414, 1418 n.2 (D. Kan. 1993))); *Universal Life Ins. Co. v. Lindberg*, No. 1:20CV681, 2023 WL 6554451, at *3 (M.D.N.C. Sept. 21, 2023) (where a lien is not adequate to secure the judgment, it does not satisfy the purpose and intent of Rule 62(f); thus, a lien on real property worth less than $4 million could not support a stay of execution under Rule 62(f) where the judgment was $524 million), *report and recommendation adopted*, 2023 WL 7062058 (M.D.N.C. Oct. 25, 2023). TAES has not indicated that it has any real property in Michigan, let alone real property valued such that it would adequately secure the judgment in this

case. For this additional reason, the court finds that Rule 62(f) is not applicable.

C. The Appropriate Bond Amount

As explained above, as a rule, a full bond "should almost always be required." *Kaufman v. Knipp*, No. 3:21-CV-1128-DAC, 2024 WL 692691, at *2 (N.D. Ohio Feb. 20, 2024) (quoting *Maxum Indem. Co. v. Drive W. Ins. Servs., Inc.*, No. 1:13-CV-191, 2019 WL 340107, at *1 (S.D. Ohio Jan. 28, 2019)); *see also Hamlin v. Charter Township of Flint*, 181 F.R.D. 348, 353 (E.D. Mich. 1998) ("Although Courts generally require that a full bond be posted to obtain a stay pursuant to Rule 62(d), a court may, in its discretion, modify or even waive the full bond requirement."). A full bond "include[s] the full amount owed under the award, post-judgment interest, attorney's fees and costs." *Verhoff v. Time Warner Cable, Inc.*, No. 3:05CV7277, 2007 WL 4303743, at *2 (N.D. Ohio Dec. 10, 2007) (citing cases). Only in "extraordinary circumstances" should anything less than a full bond be required. *Door v. City of Ecorse*, No. 05-73074, 2007 WL 9700929, at *1 (E.D. Mich. July 19, 2007) (citing *C. Albert Sauter Co. v. Richard S. Sauter Co.*, 368 F. Supp. 501, 520 (E.D. Pa. 1973)). The moving party has the burden to objectively demonstrate the reasons for departing from the bond requirement. *Id*. (citing

*Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)).

Here, the court finds that requiring the full bond amount is necessary and appropriate. TAES is incorporated and headquartered outside the state of Michigan and does not publish any financial information. TAES is owned by a foreign company, Toshiba Corporation, which is privately owned by private equity funds. *See* Makiko Yamazaki, *Toshiba Says $14 Billion Takeover Bid by JIP Succeeds, Set to Go Private*, Reuters (Sept. 21. 2023), https://www.reuters.com/markets/deals/jip-gains-7865-stake-toshiba-through-tender-offer-2023-09-20/. This court previously observed that "Plaintiffs and the court do not know what is happening at TAES with respect to its business, asset moves, or corporate organization." (ECF No. 438, PageID.45756). In *Uhl v. Komatsu Forklift Co.*, No. 04-10148, 2006 WL 8446344, at *2 (E.D. Mich. Dec. 27, 2006) (Lawson, J.), the court found a bond that covered the judgment plus one year of interest to be appropriate. The court considered the cost of appeal and the potential attorney fee award to justify the determined amount. *Id*. Further, the court found the full bond necessary because the defendant was a foreign corporation and did not demonstrate that it had assets readily available in the United States that

would be able to satisfy the judgment. *Id*. Based on similar considerations outlined above, the court finds Plaintiffs' suggested bond amount of the judgment plus three years of post-judgment interest to be necessary and appropriate, given that TAES is a foreign corporation and has not demonstrated that it has assets here sufficient to satisfy the judgment and because the appeal period here is likely to be lengthy and may include a request for Supreme Court review. *See Cremeans v. Taczak*, No. 2:19-CV-02703, 2026 WL 693021, at *2 (S.D. Ohio Mar. 11, 2026) ("Post-judgment interest should include 'a reasonable estimate of the postjudgment interest that will accrue during the pendency of the appeal.'" (quoting *Jack Henry & Assoc., Inc. v. BSC, Inc.*, 753 F. Supp. 2d 665, 673 (E.D. Ky. 2010), *aff'd*, 487 F. App'x 246 (6th Cir. 2012))), *on reconsideration in part*, 2026 WL 1074124 (S.D. Ohio Apr. 20, 2026).

Finally, TAES has not offered any reasons to depart from the default of a full bond and thus, the court will require TAES to post a bond in the full amount of the judgment plus three years of post-judgment interest in order to stay execution on appeal. *See e.g.*, *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F. 2d 1189, 1191 (5th Cir. 1979) ("If a court chooses to depart from the usual requirement of a full security supersedeas

bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for the departure.").

## III. CONCLUSION

For the reasons set forth above, the court **DENIES** Defendant's motion to approve posting a bond in the maximum amount allowed under Michigan statutory law. The court will grant the motion to stay execution and enforcement of the judgment upon TAES's posting of a bond in amount of $549,484,279.

**SO ORDERED**.

Dated: November 6, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge