UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONSUMERS ENERGY CO. and
DTE ELECTRIC CO.,

Plaintiffs,
v.

TOSHIBA AMERICA ENERGY
SYSTEMS CORP. and
TOSHIBA CORP.,

Defendants.
______________________________/

Case No. 22-10847

F. Kay Behm
U.S. District Judge

**OPINION AND ORDER REGARDING**
**PLAINTIFFS' MOTION TO COMPEL (ECF No. 418)**

## I. PROCEDURAL HISTORY

The Utilities are seeking their fees and expenses as part of their claim against Toshiba Corporation for its breach of the Parent Guaranty. (ECF No. 1, PageID.53–55). In the Parent Guaranty, Toshiba Corporation promised to "hold harmless and keep indemnified the [Utilities] against any and all losses, damages, claims, costs, charges, and expenses howsoever arising" from a breach of contract by TAES, including "without limitation, the [Utilities'] reasonable costs, expenses and attorney fees incurred in enforcing its rights under the Contract and/or [the] Guaranty." (ECF No. 1-3, PageID.171). The

Utilities served discovery requests on Toshiba seeking the following information:

> Request No. 1: All bills and invoices from Your Attorneys, Experts, Discovery Vendors, and any other Person in connection with this Action, including all detail and backup information provided with such bills and invoices.
>
> Request No. 2: Documents sufficient to show all fees, rates, costs, and hours (or other unit of work) charged by each of Your Attorneys, Experts, Discovery Vendors, and any other Person in connection with this Action.
>
> Request No. 3: Documents sufficient to show the amounts You paid in respect of each bill or invoice from Your Attorneys, Experts, Discovery Vendors, and any other Person in connection with this Action.
>
> Request No. 4: Documents sufficient to show all costs paid or incurred by You or on your behalf in connection with this Action, including but not limited to: travel, food, lodging, office space, equipment, supplies, and similar.
>
> Request No. 5: Documents sufficient to show (a) any commitment, undertaking, or obligation on the part of any Person (other than TAES or Toshiba Parent) to pay (directly or indirectly, in whole or in part) for services provided by Your Attorneys, Experts, Discovery Vendors, and any other Person in connection with this Action and/or (b) all such payments.
>
> Request No. 6: All engagement letters or similar documents or agreements stating the terms of Your engagement or employment of any attorney, expert,

> or other professional individual or firm in connection with this Action.

(ECF No. 418-3). Toshiba raised a number of objections to these request, including on the basis of relevance, proportionality, privilege, and undue burden. (ECF No. 418-4). Plaintiffs have filed a motion to compel responses to their discovery requests, which Toshiba has opposed. (ECF Nos. 418, 424, 427). The court held a hearing on this matter on October 28, 2026.

## II. ANALYSIS

The Federal Rules of Civil Procedure were written to facilitate the discovery of relevant evidence proportional to the needs of each case. Rule 26 authorizes relatively expansive discovery, subject to the considerations set forth in Rule 26(b)(1). The Rule provides that a party may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id.* The trial court has broad discretion over discovery matters. *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999). In assessing proportionality as it relates to disputed discovery requests the court should look to:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

> expense of the proposed discovery outweighs its likely benefit.

*State Farm Mut. Auto Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F.Supp.3d 700, 704 (E.D. Mich. 2017) (citation omitted); *see also* Fed. R. Civ. P. 26(b)(1).

In evaluating relevance and proportionality, the court looks to the relevant law governing the claim for attorney fees and expenses in this case. In diversity cases, state law generally governs the award of attorney's fees. *Hemlock Semiconductor Corp. v. Solarworld Indus. Sachsen GmbH*, No. 13-CV-11037, 2016 WL 6471192, at *2 (E.D. Mich. Nov. 2, 2016), aff'd sub nom. *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 702 F. App'x 408 (6th Cir. 2017) (citing *Auto. Support Grp., LLC v. Hightower*, 503 F. App'x 411, 421 n.5 (6th Cir. 2012); *Miller v. Alldata Corp.*, 14 F. App'x 457, 468 (6th Cir. 2001)). Thus, Michigan law applies to Plaintiffs' claim for attorney fees and expenses. Under Michigan law, parties can include a contractual provision which requires the breaching party to pay the other side's attorney fees and costs. *Papo v. Aglo Restaurants of San Jose, Inc.*, 149 Mich. App. 285, 299 (1986). However, the award of attorney fees must be reasonable. *Id*. The burden of proving that requested fees are reasonable rests with the party requesting them. *Smith v. Khouri*, 481 Mich. 519, 528 (2008). As explained by the Michigan Court of Appeals, although

*Smith* did not involve attorney fees arising out of the parties' contract, the framework set forth by the Michigan Supreme Court in *Smith*, and reiterated in *Pirgu v. United Servs. Auto. Ass'n,* 499 Mich. 269, 274 (2016), "remains the standard for determining the reasonableness of requested attorney fees." *de Simone v. Barberio*, No. 351424, 2021 WL 2774142, at *3 (Mich. Ct. App. July 1, 2021).

*Smith* instructed that when determining the reasonableness of an attorney fee, the trial court should first determine the fee customarily charged in the locality for similar legal services, which can be established "by testimony or empirical data found in surveys and other reliable reports." *de Simone*, at *4 (quoting *Smith*, 481 Mich. at 531-532). To determine the fee customarily charged in the locality, "trial courts have routinely relied on data contained in surveys such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan." *Id.* (quoting *Smith*, 481 Mich. at 530). "The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Id*. (quoting *Pirgu*, 499 Mich. at 281). "It is important to use objective data, such as the State Bar survey, to arrive at a baseline figure." *Id*. (citing *Smith*, 481 Mich. at

530). "The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee." *Id*. (quoting *Smith*, at 531).

After arriving at the baseline figure, the court must then consider a number of factors to determine whether an upward or downward adjustment to the baseline number is appropriate. *Id*. This non-exhaustive list of factors includes:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
> (3) the amount in question and the results obtained,
> (4) the expenses incurred,
> (5) the nature and length of the professional relationship with the client,
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
> (7) the time limitations imposed by the client or by the circumstances, and
> (8) whether the fee is fixed or contingent.

*Pirgu*, 499 Mich. at 282.

The parties dispute whether under Michigan law, the court could ever consider opposing counsels' fees as relevant evidence in a fee dispute. One Michigan federal court has concluded that "both the Michigan Supreme Court and the Michigan Court of Appeals have indicated it is improper to consider

the fees of opposing counsel to measure the reasonableness of the attorney fees incurred by the party seeking a fee award." *Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2015 WL 881585, at *3 (W.D. Mich. Mar. 2, 2015), *aff'd*, 822 F.3d 304 (6th Cir. 2016) (citing *Fletcher v. Bd. of Educ.,* 323 Mich. 343, 349 (1948) ("The reasonableness of the charges for services by one attorney cannot be measured by what some other attorney would charge. There is no universal yardstick which can be used to measure the reasonableness of charges for services of all attorneys, comparing one with another." (internal quotation marks omitted)); *Smolen v. Dahlmann Apartments, Ltd.,* 186 Mich. App. 292, 298 (1990) (noting that "the reasonableness of charges for legal services performed by one attorney is not measured by what other attorneys would charge" and holding that "the trial court did not abuse it discretion in refusing to permit the discovery of defendants' attorneys' time records and hourly rates").

This court does not read the decisions so narrowly that discovery on this topic could never be allowed when applying Michigan law, particularly where Michigan law now expressly requires the court to examine the fee customarily charged in the locality for "similar legal services" and directs the court to look at "credible evidence of the legal market." *Smith*, 481 Mich. at

530-31. As *Montgomery* pointed out, the entitlement to such information depends on whether it is relevant to the specific objections that the opposing party has raised. *Id*. at *3. For instance, in *Montgomery*, the opposing party asserted objections regarding the sufficiency and accuracy of the billing records, requests for fees on matters where the moving party was unsuccessful, and the reasonableness of the proposed billing rate. The court first pointed out that the defendants were not arguing that the plaintiff's counsel spent too much time on a task, for which their own records might be relevant. The court then concluded that, given the defendants' objections, their own counsel's billing records would not assist the court in determining whether the plaintiff was "entitled to fees incurred in connection with her class action allegations and unsuccessful claims, whether [the plaintiff's] counsel's billing records and descriptions of the work performed are too inaccurate or insufficient to enable the Court to determine whether the work performed was reasonable, and whether [the plaintiff] has failed to show that her counsel's requested hourly rate is reasonable for an attorney with similar experience, in a similar locale, and in similar circumstances." *Id*.

Another court has pointed out that "[a]lthough courts have found that defense counsel's billing records 'could be relevant' to determining the

reasonableness of plaintiff's counsel's rates and time expended, the relevancy of such records 'depend[s] upon the type of objection raised by opposing counsel.'" *Yeremian v. MGM Grand Casino*, No. 2:22-CV-12978, 2025 WL 1749974, at *16 (E.D. Mich. June 25, 2025); (quoting *Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 WL 2062505, at *2 (E.D. Tenn. May 9, 2019) (citations omitted)). Such records are irrelevant to the accuracy of the time billed, but could be relevant to the reasonableness of the plaintiff's hourly rates if the attorneys have "similar experience" or "similar circumstances." *Id*.

At the time of the briefing and hearing, the court did not yet have the benefit the Utilities' fee petition or Toshiba's response/objections to those fees. In order to address the court's concerns about an incomplete record, the court directed the parties to file their expert reports regarding attorney fees/litigation expenses. The parties have done so. (ECF No. 454, 455).

One point of particular contention appears to be the reasonable hourly rates to be calculated by the court in determining reasonable fees. The Utilities point to the Michigan Supreme Court's decision in *Smith* which says "[b]oth the parties and the trial courts of this state should avail themselves of the most relevant available data," which includes "reliable surveys or other

credible evidence of the legal market." *Smith*, 481 Mich. at 530-31, 532. The Utilities argue that defense counsel's rates fall within the category of "other credible evidence of the legal market." Michigan courts have not expressly addressed whether opposing counsel's rates are relevant to the determination of a reasonable hourly rate in the context of the *Smith/Pirgu* analysis, as *Smolen* and the cases it relied predated *Smith/Pirgu* and did not include an analysis of the relevant legal market or the fees customarily charged for similar legal services.

Importantly, however, Michigan courts recognize that "the actual fee charged, while clearly not dispositive of what constitutes a reasonable fee, is a factor to be considered in determining market place value as it is reflective of competition within the community for business and typical fees demanded for similar work." *Van Elslander v. Thomas Sebold & Assocs., Inc.*, 297 Mich. App. 204, 234 (2012). It is proper to consider the fees actually charged because the market has apparently valued the attorneys' work at those hourly rates. *Hemlock Semiconductor Corp.*, 2016 WL 6471192, at *5. The *Hemlock* court also found looking at only Michigan attorney rates would be "underinclusive" in that particular case because of the global nature of the suit and where the firms for both sides were based outside of Michigan (one

was based in New York and the other in Pittsburgh). *Id*. at *4. The court considered the attorney fee rates awarded to a similar firm working on complex commercial litigation in a New York case to be probative evidence of the customary fees. *Id*.

As the *Yeremian* court acknowledged, such records could be relevant to the reasonableness of the plaintiff's hourly rates if the attorneys have "similar experience" or "similar circumstances." *Id.* at *16. There does not seem to be much dispute that the teams of attorneys on each side of this case were in similar circumstances and likely have similar experience. Further, the court finds that Defendants' counsels' billing rates could provide probative and credible evidence of the "market place value as [they are] reflective of competition within the community for business and typical fees demanded for similar work." *Van Elslander*, 297 Mich. App. at 234. Accordingly, the court will grant the motion to compel as it relates to Defendants' counsels' billing rates, along with the billing rates of their paralegals.

Plaintiffs also argue that Defendants' bills would be relevant to Toshiba's challenges to their staffing, including the number of and the seniority of lawyers on certain tasks. Interpreting Michigan law, the Sixth Circuit has approved a "[w]hat is sauce for the goose is sauce for the gander"

approach to staffing objections, finding no abuse of discretion in not discounting attorney fees for depositions where they were similarly staffed on both sides. *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 702 F. App'x 408, 414 (6th Cir. 2017). Accordingly, Defendants' billing records could be relevant to evaluating any staffing objections.

However, the court is not inclined to order a wholesale production of Defendants' counsels' billing records as opposed to a targeted production pertaining to the specific objections lodged by Defendants. A review of Defendants' expert witness report reveals only modest staffing objections. Specifically, Mr. Neuman opines that the trial itself was overstaffed, finding that staffing the trial with 10 different attorneys and four different paralegals was excessive, redundant, and unnecessary. (ECF No. 455-1, PageID.47919). Thus, Mr. Neumann removed time billed by four attorneys for their time attending trial and removed time for multiple paralegals attending trial. *Id*. at PageID.47919-20. The court concludes that how Defendants' counsel staffed the trial would provide relevant evidence to evaluate whether Plaintiffs' counsels' staffing was reasonable. Accordingly, Defendants' counsel will be

required to produce billing records sufficient to establish the time billed for attorneys and paralegals who attended trial on their behalf.

Mr. Neumann also made a 5% reduction for reasonableness related to particular hours billed for three Jenner & Block timekeepers who consistently billed in half-hour and full hour increments. (ECF No. 455-1, PageID.47920-21). In order to evaluate the reasonableness of the time-entries for these time-keepers, the court does not find that any billing records from Defendants' counsel would be particularly relevant or probative of reasonableness.

Mr. Neuman also carves out for a lower rate treatment about 3500 hours for what he calls Jenner's "discovery attorneys." (ECF No. 455-1, PageID.47917-18). Plaintiffs' expert, Mr. Cranmer, applies a blended associate rate to these attorney hours while Mr. Neumann applies the actual rate billed. *Id*. The court does not find that Defendants' billing records would be relevant to the court's analysis of the reasonable rates for this group of associates. Accordingly, no disclosure by Defendants' counsel will be required.

The next category in dispute is expert fees and expenses. In an unpublished decision, the Michigan Court of Appeals held that the *Smith*

factors should be used to determine the reasonableness of expert witness fees. *Gentry v. Gentry*, No. 307071, 2013 WL 5731611, at *4 (Mich. Ct. App. Oct. 22, 2013). The Utilities argue that the Toshiba experts' billings may provide comparison points for the court in evaluating Plaintiffs' expert fees. Further, because Toshiba challenges the Utilities' experts' expenses, Plaintiffs argue that Toshiba's experts' expenses are relevant to considering whether the categories of expenses Toshiba now disputes, including travel, the procurement of scientific equipment, and related costs, were reasonable in this case. However, the actual challenges to Plaintiffs' expert fees and expenses contained in Mr. Neuman's report are quite limited. First, Mr. Neuman objects to the fees associated with Mr. Emmert's July 2025 supplemental report, which resulted from Plaintiffs' descoping repair work and removing it from their claimed damages. (ECF No. 455-1, PageID.47928). According to Mr. Neuman, this relates to work that should never have been done in the first place and thus the hours/expenses related to that supplemental report are not reasonable. *Id*. Mr. Neuman also finds that certain travel expenses Mr. Emmert charges for a 10 day stay in Chicago were unreasonable because that is where his primary office is located. *Id*. at PageID.47929. The court does not find that Defendants' expert witness

billings would be particularly relevant to the court's determination of the reasonableness of these two discrete expert witness fee/expense issues. Accordingly, no disclosure will be required.

As to trial related expenses, the Utilities argue that discovery of Toshiba's trial related expenses would provide a relevant benchmark for comparison of the reasonableness of the expenses associated with Plaintiffs' trial team living and working near the courthouse during the trial. Under the Parent Guaranty, the court will need to determine whether the Utilities' costs and expenses that Toshiba objects to are reasonable. The court was unable to locate any relevant Michigan case law governing the assessment of whether an expense is reasonable under a similar contractual provision. In one out-of-district case, the court considered its own knowledge of costs reimbursed in litigation in the locality, along with counsel's sworn statement on that issue. *MAKS Inc. Gen. Trading & Contracting Co. v. Sterling Operations, Inc.*, No. 3:10-CV-443-TAV-HBG, 2014 WL 1745432, at *18 (E.D. Tenn. Apr. 30, 2014).

Mr. Neuman opines that $13,760.27 in trial related expenses are unreasonable. (ECF No. 455-1, PageID.47944). It seems to the court that what Defendants' counsel charged their clients in terms of trial related

expenses could provide relevant and probative evidence that would assist the court in determining the reasonableness of the objected to expenses. Accordingly, the court orders Defendants' counsel to produce sufficient records documenting only their costs and expenses charged to Defendants during the trial in this matter.

## III. CONCLUSION

For the reasons set forth above, the motion to compel is **GRANTED** in part and **DENIED** in part as explained herein. Toshiba must produce the documents/information identified herein within 21 days of entry of this Order.

**SO ORDERED.**

Date: November 25, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge